Joseph F. GILLESPIE, Appellant,
v.
UNITED STATES of America, Appellee.

Ransom D. GILLESPIE, Jr., Appellant,
v.
UNITED STATES of America, Appellee.

Harry BENNETT, Appellant,
v.
UNITED STATES of America, Appellee.
Nos. 18071, 18072, 18079.

United States Court of Appeals
Eighth Circuit.
Nov. 14, 1966.

See also 8 Cir., 368 F.2d 7.

Murry L. Randall, St. Louis, Mo., for appellant. Morris A. Shenker, St. Louis, Mo., was with him on the brief.

D. M. Statton, U. S. Atty., Des Moines, Iowa, for appellee. Jerry E. Williams, Asst. U. S. Atty., Des Moines, Iowa, was with him on the brief.

Before JOHNSEN, Senior Circuit Judge, BLACKMUN, Circuit Judge, and YOUNG, District Judge.

JOHNSEN, Senior Circuit Judge.

These three cases consist of separate appeals by the defendants from their conviction on a jury trial of the seven charges in an indictment against them relating to interstate gambling activities.[1]

Appellant Joseph Gillespie was engaged in the "bookie" business at Des Moines, Iowa. Appellant Ransom Gillespie, his brother, assisted in carrying on the activities. Appellant Harry Bennett also was engaged in the "bookie" business, during some of the time involved at Biloxi, Mississippi, and some of the time at New Orleans, Louisiana, with his operations including the furnishing of point-spread and odds services on sports events and the taking of lay-off bets from other "bookies".

It was admitted on the trial that, through the periods involved, both Joseph Gillespie and Harry Bennett held gambling stamps, I.R.C. § 4411, 26 U.S. C.A.; paid excise wagering taxes, § 4401; and listed gambling as their principal business in their income tax returns.

Four of the charges were for the offenses under 18 U.S.C. § 1084 of knowingly using wire communication facilities [here long-distance telephone service], while in the betting business, for the transmission in interstate commerce of information to assist in the placing of bets and wagers on sporting events [two counts, covering different calendar periods] and for the transmission in interstate commerce of bets and wagers [two counts, covering different calendar periods].

Of the other charges, two were for the offense under 18 U.S.C. § 1952, during different calendar periods, of using a facility in interstate commerce [here long-distance telephone service] with the intent and with attempt thereafter to perform an act to facilitate the carrying on of a business enterprise involving gambling [here betting and wagering on sporting events], in violation of Chapter 726, Code of Iowa,[2] [and alleged also to be in violation of 18 U.S.C. § 1084, supra].

As to Ransom Gillespie, his conviction of all these offenses rested under the evidence upon his having been, as indicated above, an aider and abettor, and so being dealt with by the jury, on the basis of 18 U.S.C. § 2, as a principal.

The remaining charge was for the offense under 18 U.S.C. § 371 of having

---

1. The indictment originally contained eight counts, but Count VII [charge of violating 47 U.S.C. § 501, in having caused the Telephone Company to extend facilities not specified in the schedules filed with the Federal Communications Commission] was dismissed by the Court.

2. These provisions of the Iowa Code, 55 I.C.A. §§ 726.1–726.10, prohibit, among other things, gaming, betting, recording wagers, selling pools, etc.

conspired to commit the substantive offenses which have been referred to.

We regard as the principal question here whether the District Court could properly hold that the state search and seizure involved was lawful, as having had sufficient basis to constitute probable cause for the warrant issued to make search of Joseph Gillespie's residence. It was the probative materials obtained by this search and the probative fruits secured by leads therefrom upon which the federal prosecution was primarily predicated.

The warrant was issued by a judge of the Municipal Court of Des Moines, Iowa, to an officer in the vice bureau of the police department of that city. The officer had presented to the judge as magistrate a printed legal form, bearing the caption "Information for a Search Warrant", and having Joseph Gillespie's name and address typed in immediately below. The body of the instrument consisted of an affidavit form, with a blank space for insertion of an affiant's name [in which the officer filled in his own name] and with a printed recital following that, as affiant, he stated on oath that he had good reason to believe "that certain gambling devices, to-wit: Cards, Dice, Faro, Roulette Wheel, Klondyke Table, Poker Table, Punchboard, Keno Layouts" were located on the described premises.[3] The magistrate took the officer's oath and signature to the affidavit.

On the hearing of the motion to suppress, the officer testified that, beyond the recital of the affidavit, he had orally told the magistrate "that we had checked with Internal Revenue, and that Joe Gillespie had a current wagering stamp; that we had done some checking and obtained information that indicated that he was currently in the gambling business". This was all that was shown to have been before the magistrate. The officer's testimony did not make it entirely clear whether the oath taken by him was merely to the truthfulness of the formal affidavit or to that of his oral statements as well. The District Court, however, regarded the evidence on hearing of the motion to suppress as sufficiently indicative that the oath has had application to both the executed instrument and the oral statements. On the equivocalness involved, this appraisal is entitled to acceptance here as representing a not-clearly-erroneous resolution of a question of fact, within federal trial-court function.

The Court declared that, except for the oral supplementation which had thus occurred as to the affidavit there would not have existed probable cause for issuing the warrant and the motion to suppress would have had to be sustained. On this aspect, appellants argue, first, that probable cause can legally have existence and demonstration only in the contents of such executed instrument as is filed for the issuance of a warrant, and that this of itself calls for a reversal here.

Rule 41(c), Fed.Rules of Crim. Proced., 18 U.S.C.A., provides that "A warrant shall issue only on affidavit sworn to before the judge or commissioner and establishing the grounds for issuing the warrant". There are cases declaring that this requires probable cause to be determined exclusively on the contents of the affidavit for the warrant. See e. g. United States v. Whitlow, 339 F.2d 975, 979 (7 Cir., 1964); United States v. Birrell, 242 F.Supp. 191, 202 (D.C.S.D.N.Y., 1965); Tripodi v. Morgenthau, 213 F.Supp. 735, 738 (D.C. S.D.N.Y., 1962); United States v. Evans, 97 F.Supp. 95, 96 (D.C.E.D.Tenn., 1951). Assuming, for purposes of appellants' contention, the correctness of these holdings, this would not, however, be controlling as to the present situation, for

3. Joseph Gillespie lived on the second floor of a building on which there were located two apartment units, both of which were occupied by him. They bore separate street identification numbers 2719½ and 272½, and the officer had had a separate warrant issued as to each, but on their single occupancy the briefs have treated the search-and-seizure question as being the same as to both of them.

the Rule is only a procedural prescription as to the issuance of warrants by the federal courts.

On substantive aspect, to which it is necessary here for appellants' contention to reach, the Fourth Amendment contains no prescription as to the form or manner in which probable cause must be shown, but merely provides generally that " * * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation * * * ". In the adoption of this language by state constitutions as a guarantee, some states have added statutory implementation requiring an application, in writing and under oath, to be filed, with the existence of probable cause alleged, but permitting the magistrate or judge to whom the application is presented to take supplementing testimony as to the basis and facts thereof.

Thus the Iowa statutes, while requiring the filing of "a written information", supported by oath or affirmation, alleging the existence of some ground specified in the statute for issuance of a warrant and stating that the applicant believes and has substantial reason to believe that the ground exists in fact, authorizes the magistrate to satisfy himself "from his examination of the applicant and * * * other witnesses * * and * * * the allegations of the information" as to the existence or basis to believe the existence of the alleged ground. 56 I.C.A. §§ 751.4 and 751.5. The Supreme Court of Iowa has held these provisions to be valid, saying that its constitutional provision [identical in language with the Fourth Amendment] "does not mean that the probable cause * * * must be shown in the information itself. It may be shown in an affidavit attached thereto or in sworn testimony taken before the magistrate prior to the issuance of the warrant". Burtch v. Zeuck, 200 Iowa 49, 202 N.W. 542, 544, 39 A.L.R. 1349 (1925); State v. Doe, 227 Iowa 1215, 290 N.W. 518, 522 (1940).

We too have recognized the use of such auxiliary procedure by a state as constituting a valid basis for the demonstration of probable cause in the issuance of a state warrant, and as not in this respect contravening the Fourth Amendment. Miller v. Sigler, 353 F.2d 424, 426 (8 Cir., 1965). Also, while perhaps no implication can be said to be intended thereby, the following statement in Aguilar v. State of Texas, 378 U.S. 108, 109, f. n. 1, 84 S.Ct. 1509, 1511, 12 L.Ed.2d 723, 728, may nevertheless be noticed as having at least collaterally touched the field:

> "The record does not reveal, nor is it claimed, that any other information [than that contained in the affidavit] was brought to the attention of the Justice of the Peace. It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention".

But accepting here both the officer's oral statements and the affidavit in test of probable cause, we think, as appellants next contend, that there still was not before the magistrate such demonstration of ground or basis as to make reasonable, within constitutional guarantee, the issuance of the warrant sought for searching Gillespie's home.

■ The officer's affidavit that he believed and had good reason to believe that the gambling devices enumerated in the printed form were located on the premises was, of course, as held by the District Court, not sufficient by itself to constitute probable cause, since the statement was purely conclusory on the part of the officer, in that it did not set out any "underlying circumstances" which could provide basis or reason for a belief. United States v. Ventresca, 380 U.S. 102, 108–109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684. And even with the officer's oral testimony added thereto, the magistrate had before him in "underlying circumstances" only the fact that Gillespie held a federal wagering stamp and the officer's general declaration that "we had done some checking and obtained information that indicated that he was currently in the gambling business".

Nothing was disclosed as to the nature or extent of the "checking" which had been done, so as to enable the magistrate to find that such information as had been obtained could properly be regarded by the officer as entitled to credence; as indicative that the gambling activity in which Gillespie was engaged had involved or appeared to involve the possession of cards, dice, faro, roulette wheel, klondyke table, poker table, punchboard and keno layouts; and as also affording basis for belief that this possession or apparent possession would exist on the premises sought to be searched.

Gambling obviously consists, from its aspects of both street recognition and statutory enumeration, of many and varying forms in which one can professionally be engaged in that business. The term "gambling business" therefore cannot be said to provide operational signification or identification of any particular type of such activity over another. Thus information generally—which is all that is shown to have existed here—that a person is engaged in the "gambling business" would not be enough to entitle a police officer to infer that he must be conducting gaming activities and be in possession of gaming devices, as a basis for seeking to make a search and seizure against him.[4] Another officer could as logically conclude that he must be carrying on "bookie" operations, or selling pools on events, or engaged in other particular type of gambling activity upon which the officer might choose or chance to focus his mind.

To permit a warrant to issue on such a flexible basis would be to make anyone reputed to be in the "gambling business" subject to choice of designation for search within the entire field of gambling activities and thus in effect to open up general-warrant or drag-net range against him. One in the "gambling business" can, of course, be engaged in more than one form of such activity, but this does not make it possible to say that he can sufficiently be regarded as engaged in every form of such activity, or that there is no need to draw any distinction between them, so that for enforcement convenience a warrant is entitled to be issued against his residence in search and seizure on whatever type of description the officer may see fit to make.

It does not seem necessary to say more as to the artificiality of the basis on which the search here was sought and authorized to be made. The looseness of what was involved has addition from the admissions made by the officer on cross-examination that the printed form with its enumeration of gambling devices was standardly used by the police department in seeking authorization to make searches against gamblers, and that as a matter of fact he did not in the immediate situation have reason to believe that Gillespie was possessed of the enumerated devices except in the respect that "probably cards and dice were on the premises".

But even if it had been shown to the magistrate that the officer's belief in this respect was more than a general assumption that anyone in the gambling business, regardless of the type of his particular activity, would probably have some cards and dice on his premises, the existence of probable cause to believe that there was here such a possession in fact would not of itself have entitled the officer to a writ. Neither cards nor dice nakedly constituted contraband, as did the other devices enumerated in the form, under 55 I.C.A. § 726.5, so that under 56 I.C.A. § 751.3(4) a writ directed at their seizure was entitled to be issued only as they represented "property which is being used or employed in carrying on, keeping or maintaining a place of any description for the purpose of gambling * * *". Here, as our previous discus-

---

4. The fact that a gambling stamp had been taken out could hardly carry any implication of possession of the gambling devices alleged here to exist, since under 26 U.S.C.A. §§ 4401, 4411 and 4421, this is in the nature of an occupational tax on one in the business of accepting wagers as to sports events, or in operating wagering pools, or conducting lotteries for profit.

sion has indicated, there was nothing in either the officer's affidavit or his statement, even of naked assertion, that Gillespie's residence was, or was reputed to be, a place where gambling was being carried on, so as to entitle any cards or dice he might possess there to be made the subject of search and seizure as instrumentalities of such an establishment.

What, of course, was actually effected by the writ here was not the seizure of any contraband gaming devices, but the acquiring of evidence as to Gillespie's "bookie" operations and Bennett's relations thereto, from betting slips, account notations, leads as to the chain of telephone communications involved, and other informational tentacles. Whether if the warrant had been one of lawful issuance so as to entitle it to be a basis of legal search, these probative materials could, within the requirement of the Fourth Amendment as to "particularly describing the * * * things to be seized", be regarded as sufficiently coming within the description "certain gambling devices, to-wit: * * *", there is no occasion for us to consider in view of the result which is being reached. See generally Stanford v. State of Texas, 379 U.S. 476, 485–486, 85 S.Ct. 506, 511–512, 13 L.Ed.2d 431 (1965); Johnson v. United States, 293 F.2d 529, 540 (D.C. Cir., 1961); United States v. Russo, 250 F.Supp. 55 (D.C.E.D.Pa., 1966).

■ We hold that the District Court erred in ruling that the issuance of the warrant rested on sufficient demonstration of probable cause; in denying the motion to suppress; and in permitting the things seized and their fruits to be used in evidence.

The question as to the propriety of this evidential use has been treated by the parties as having application to all the appellants in the joint-trial situation involved. The Government has made no contention, on oral argument or in its brief, that if the evidence were to

be deemed to be unlawfully taken and held by it, the use thereof to convict should be declared to be improper only as against Joseph Gillespie and not as against Ransom D. Gillespie and Harry Bennett.

While the Government's brief contains no express indication, we assume that the position which it thus tacitly seems to have taken here is because of the holding of the Supreme Court in McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); the similar holding, based on McDonald, made by Hair v. United States, 110 U.S.App.D.C. 153, 289 F.2d 894, 897 (1961), and by Schoeneman v. United States, 115 U.S.App. D.C. 110, 317 F.2d 173, 174 (1963); and the apparent acceptance of this holding by the Government in not seeking certiorari as to either of these two decisions. See also Rosencranz v. United States, 334 F.2d 738 (1 Cir., 1964).

The effect of the *McDonald, Hair* and *Schoeneman* cases would seem to be that where probative material has been illegally seized from a defendant, and the seizure has been properly challenged by him so as to make the Government's possession thereafter a matter of unlawful holding, the Government will not be permitted, on a joint trial of such defendant and a co-defendant for the same offense, to introduce the material in evidence, even against the co-defendant.[5]

The holding of these cases does not appear to have gone farther than to a situation of joint trial. It also may be noted that in none of the cases, nor in the situation here, did the material held by the Government constitute legal contraband, if the lack of right of the defendant to have such material returned to him on challenge to its illegal seizure could make any difference as to the Government's holding of it and use thereof against the co-defendant.

In making this disposition, we are dealing with the matter as it has, pre-

5. The separate concurrence, however, of Mr. Justice Rutledge in the *McDonald* case, 335 U.S. at 456–457, 69 S.Ct. at 194, goes the length of declaring that "the evidence, having been illegally obtained, was [wholly] inadmissible".

sumably consideredly, on the basis of the *McDonald, Hair* and *Schoeneman* cases (though without mention of these decisions) been left before us. If the search-and-seizure evidence had been admissible, the convictions would in our opinion have been entitled to be affirmed. The other contentions which have been urged as error by appellants have all been duly considered, but we do not regard any of them as having such merit as would call for a reversal.

Reversed and remanded as to each of appellants for further proceedings.