**UNITED STATES of America, Appellee,**

**v.**

**Dr. Thomas C. STURGEON, Appellant.**

**No. 73–1719.**

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1974.

Decided July 18, 1974.

Rehearing and Rehearing En Banc Denied Aug. 15, 1974.

Certiorari Denied Dec. 16, 1974. See 95 S.Ct. 659.

Robert W. Matias, Cedar Rapids, Iowa, for appellant.

Gary E. Wenell, Asst. U. S. Atty., Sioux City, Iowa, for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and SMITH, Senior District Judge.*

HEANEY, Circuit Judge.

Dr. Thomas Chester Sturgeon appeals from his convictions for conspiracy and various counterfeiting violations.

Sturgeon's arrest and convictions were the culmination of an extensive counterfeiting investigation jointly conducted by the Cedar Rapids, Iowa, Police Department, the Linn County, Iowa, Sheriff's Department and the United States Secret Service. At approximately 1:30 A.M. on January 31, 1973, a search war-

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

rant was obtained from Judge August Honsell of the Cedar Rapids Municipal Court by two members of the Linn County Sheriff's Department and two Secret Service agents. The warrant authorized an immediate search of Sturgeon's home and person for counterfeit twenty-dollar Federal Reserve notes and specified counterfeiting paraphernalia. The warrant was issued on the premise that the possession and use of these materials was in violation of Iowa law. The warrant was immediately executed by the local police and sheriff officials and the Secret Service agents. Sturgeon and an accomplice, Donald Washburn, were arrested. A number of items, including counterfeit currency and counterfeiting paraphernalia, were seized and were admitted into evidence at Sturgeon's trial.

Sturgeon and Washburn were indicted by a federal grand jury in a twelve-count indictment on June 8, 1973. Washburn pled guilty to four of the counts against him. Sturgeon was tried and convicted of all eight counts against him on September 12–14, 1973.[1] Sturgeon dismissed his retained counsel approximately three weeks before his trial. Two weeks before trial, the court, at Sturgeon's request, appointed an attorney to advise him during trial. Sturgeon proceeded, *pro se*, at trial with the assistance of the court-appointed legal advisor.

On this appeal, Sturgeon contends that: (1) the counterfeiting of Federal Reserve notes does not constitute a violation of Iowa law, and, therefore, there

was no probable cause on which to issue the search warrant; (2) the search was a federal one, and that this being the case, Rule 41 of the Federal Rules of Criminal Procedure had to be complied with but was not; (3) his waiver of trial counsel was not knowing and intelligent; (4) the trial court erred by failing to hold an evidentiary hearing when in a post-trial motion he contended that his retained counsel represented him ineffectively in regard to his pretrial motion to suppress the evidence obtained pursuant to the search warrant; and (5) the trial court erred in failing to grant his motion for a continuance of his trial after he dismissed his retained counsel. We affirm.

## IOWA LAW

■ The "Information for Search Warrant," filed with Judge Honsell at the time the warrant was issued, indicated that the items seized formed the basis for violations of a number of subsections of § 718 of the Iowa Code.[2] The warrant stated "that certain property is owned or possessed in violations of the laws of Iowa," and "commanded [an] immediate search of the premises and person * * *" for counterfeit Federal Reserve notes and specified paraphernalia used in manufacturing them. The Iowa Supreme Court has not interpreted the relevant statutes with respect to whether they prohibit counterfeiting of Federal Reserve notes. We believe that they can reasonably be construed as doing so. For example, the phrase "any other government" in § 718.4 of the

---

1. The offenses of which Sturgeon was convicted are as follows: (1) Count I, conspiring to manufacture, sell and distribute counterfeit twenty-dollar bills in violation of 18 U.S.C. § 371; (2) Counts VI and IX, counterfeiting of securities of the United States, namely twenty-dollar bills, in violation of 18 U.S.C. § 471; (3) Counts VII and VIII, possession of counterfeit securities of the United States, namely certain other twenty-dollar bills, in violation of 18 U.S.C. § 472; and (4) Counts X, XI and XII, unlawful custody and possession of printing plates made in the similitude of a plate from which

genuine United States Federal Reserve notes have been printed, all in violation of 18 U.S.C. § 474.

2. The statutes cited as being violated were the following sections of the Iowa Code Annotated (1950): § 718.3 (*Public Instruments*), § 718.4 (*Counterfeiting bills, notes or drafts*), § 718.5 (*Possession of counterfeit papers*), § 718.6 (*Uttering counterfeit securities*), § 718.13 (*Making tools for counterfeiting*), and § 718.14 (*Possession of tools for counterfeiting*).

Iowa Code Annotated[3] can be read to include the United States Government; and inasmuch as the Federal Reserve Banks are corporate entities chartered by the United States and are authorized to issue Federal Reserve notes, the counterfeiting done here would seem to fall within the confines of the statute. Moreover, the determination of Judge Honsell that the counterfeiting of Federal Reserve notes violates the Iowa statutes absent authority to the contrary is entitled to weight. Thus, we reject Sturgeon's contention that, as a matter of law, the warrant was improvidently granted because counterfeiting of Federal Reserve notes does not constitute a violation of Iowa law. We reserve for discussion *infra* the issue as to whether the factual information presented to Judge Honsell constituted a sufficient showing of probable cause that Iowa law was violated.

■ We are also convinced that Iowa law governing the issuance and execution of search warrants was complied with and that the officers obtained the warrant from the state judge in a good faith effort to secure evidence for use in a state prosecution and not because they sought to avoid the requirements of Rule 41.

## PROBABLE CAUSE AND RULE 41

■ The matter is not ended by our holding that the warrant was validly issued pursuant to state law. There was significant federal involvement in the search. Therefore, the search must be characterized as a federal one. *See, Lustig v. United States,* 338 U.S. 74, 78–79, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949). We must then decide whether the issuance of the warrant violated any constitutional requirement[4] and whether any provision of Rule 41 designed to protect the integrity of the federal courts or govern the conduct of federal officers was violated.[5]

■ The only constitutional question raised is that the affidavits failed to demonstrate probable cause for the issuance of the warrant. We are satisfied that probable cause was shown in the affidavits[6] contained in the request for the warrant. To the extent that the affidavits were based on the affiants' personal observations, they revealed that: (1) Donald Washburn,. Sturgeon's co-

---

3. Section 718.4 of the Iowa Code Annotated provides as follows:

    If any person make, alter, forge, or counterfeit any bank bill, promissory note, draft, or other *evidence of debt* issued or purporting to be issued by any corporation or company duly authorized for that purpose by any state of the United States, *or any other government* or country, with intent to injure or defraud, he shall be imprisoned in the penitentiary not more than ten years, or be fined not exceeding three hundred dollars, and imprisoned in the county jail *not exceeding one year.* (Emphasis supplied.)

4. The constitutional requirements must, of course, be met irrespective of whether the search is classified as a federal or state one. *See,* Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

5. In United States v. Sellers, 483 F.2d 37, 43 (5th Cir. 1973), the Fifth Circuit stated:

    A federal court reviewing the sufficiency of a warrant issued by a state court, for the purpose of determining whether the fruits of a resulting search are lawful and hence admissible in a federal prosecution, must determine whether the warrant was issued as a federal warrant or as a state warrant. If the warrant was issued under authority of Rule 41 as a federal warrant clearly it must comply with the requirements of the rule. If, however, the warrant was issued under authority of state law then every requirement of Rule 41 is not a sine qua non to federal court use of the fruits of a search predicated on the warrant, even though federal officials participated in its procuration or execution. The products of a search conducted under the authority of a validly issued state warrant are lawfully obtained for federal prosecutorial purposes if that warrant satisfies constitutional requirements and does not contravene any Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers.

6. The affidavits were contained in the "Information for Search Warrant." They were sworn to, and the affiants were present before Judge Honsell.

conspirator, had sold counterfeit twenty-dollar Federal Reserve notes to the Secret Service agents on three occasions; (2) one of these sales was made at the agents' motel room on the evening of January 30, 1973; (3) Sturgeon was present at the January 30th sale and informed the agents that he had printed the notes and would print more that evening for delivery to the agents on the next day; (4) Sturgeon and Washburn were observed leaving the motel at 9:15 P.M. on January 30th and were followed to Sturgeon's residence; (5) Deputy Sheriff Beuter had surveilled Sturgeon's home late in the evening of January 19th and observed a light from a crack in the wall and heard the sound of machinery emanating from the premises. To the extent that the affidavits were based on hearsay information [7] they satisfy the requirements of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964). The reliability of the merchants was sufficiently shown, *see*, United States v. Unger, 469 F.2d 1283, 1286–1288 n. 4 (7th Cir. 1972), cert. denied, 411 U.S. 920, 93 S.Ct. 1546, 36 L. Ed.2d 313 (1973), and there was a sufficient statement of the underlying circumstances from which the merchants learned that Sturgeon possessed counterfeiting paraphernalia in his home.

Sturgeon urges that Rule 41 was violated in the following respects and that,

7. That information was contained in the "Information for Search Warrant" and is as follows:

On January 25, 1973 at approximately 11:00 AM I, Captain George Griffin, being employed by the Linn County Sheriff's Office in Cedar Rapids, Iowa did have an occasion to interview Russell Gallagher, J. P. Gasway Paper Company, Cedar Rapids, Iowa who Advised [sic] me that approximately three months ago he was in the building occupied by Thomas C. Sturgeon at 530 10th Street SE Cedar Rapids, Iowa and did observe a printing press along with various pieces of printing paraphernalia. Further that Mr. Gallagher advised us that Sturgeon had been purchasing various printing supplies which could be used for manufacturing counterfeit notes, specifically Vonson Amazon green ink and Von Son ivy mint green ink also printing plates.

therefore, the fruits of the search were not admissible in a federal trial:

▮ (1) *The issuing judge was a city and county judge, not a "judge of a state".* [Rule 41(a)] We find no merit to this contention. The Cedar Rapids Municipal Court was a state court of record created by state law. §§ 602.1 and 602.13 Iowa Code Annot. (1950). *Compare*, Navarro v. United States, 400 F.2d 315 (5th Cir. 1968).

▮ (2) *The testimony given when the warrant was issued was not recorded.* [Rule 41(c)] This fact is immaterial. All information necessary for the issuance of the warrant was stated in the affidavits for the warrant. Thus, the fact that some unrecorded testimony was taken with respect to a Secret Service agent's expertise in identifying counterfeit bills is not violative of the Rule. Moreover, Judge Honsell recorded on the warrant that he was satisfied from the agent's testimony that he was qualified to give expert testimony.

▮ (3) *The warrant did not state that it was to be executed in the nighttime.* [Rule 41(c)] We are satisfied that this provision of the Rule was complied with. The warrant was secured at night, it authorized an immediate search, and it is clear from the record that Judge Honsell understood that it was going to be served immediately.

\*     \*     \*     \*     \*

I, Paul D. Parmelee, Special Agent of the Secret Service, further state that I did obtain samples of Von Son Secret Set black ink and Von Son Secret Set Amazon green ink from Mr. Lynn Fox of Mid-Western Paper Company in Cedar Rapids, Iowa who advised me that he had sold such ink to Thomas C. Sturgeon on January 2, 1973. Further that I submitted the samples of this ink to the Iowa Bureau of Criminal Investigation Laboratory in Des Moines along with one of the notes (counterfeit) that I had purchased from Washburn on 1–16–73. Further that I have been advised by this Laboratory that the samples ink obtained from MidWestern Paper Company and purchased by T. C. Sturgeon did produce identical laboratory results as the ink contained on one of the counterfeit notes that I had purchased from Donald K. Washburn on 1–16–73.

Furthermore, legitimate reasons for a nighttime search were set forth in the affidavits.

■ (4) *A copy of the warrant and receipt for the property taken was not left with Sturgeon, and an inventory was not completed in his presence or that of a credible person other than the applicants for the warrant.* [Rule 41(d)] The record belies this contention. A copy of the warrant and a preliminary inventory of the property taken was left on the premises with Sturgeon's wife, and the inventory was completed in the presence of credible persons other than those who applied for the warrant.

■ (5) *The warrant did not designate a federal magistrate to whom it should be returned.* [Rule 41(c)] We do not believe that this provision of Rule 41 is applicable where a state court judge issues a state warrant for the violation of state law. The provision is a technical one which blueprints the procedure for the issuance of federal warrants and is not designed to protect the integrity of the federal courts or assure reasonableness on the part of federal law enforcement officers. *Cf.*, United States v. Sellers, 483 F.2d 37, 44 (5th Cir. 1973). Moreover, the warrant required a return to Judge Honsell, and it was returned to the Cedar Rapids Municipal Court along with a typewritten final inventory.

## OTHER CONTENTIONS

■ We have carefully reviewed the record with respect to Sturgeon's other three contentions and find them to be without merit. The trial court carefully cautioned Sturgeon as to responsibilities and dangers involved in self-representation and appointed an attorney to serve as his legal advisor. Under the circumstances, it is clear that his waiver of counsel was knowing and intelligent.

■ The trial court did not err by failing to grant a hearing on Sturgeon's request for a new trial on the ground that his retained counsel was ineffective with respect to a motion to suppress evidence. The ineffectiveness was alleged below to consist of a failure to comply with Local Rules regarding briefs and citations of authority. It is not apparent from the record that there was a failure to comply with the Local Rules; and if there was such a failure, it was overlooked by the trial court judge who heard the motion and correctly decided the motion on its merits.

■ Finally, we reject the contention that the trial court erred by failing to grant a continuance to Sturgeon after he had dismissed his counsel three weeks prior to trial.

The granting of motions for continuance before or during trial is discretionary with the trial court, and in the absence of a clear abuse of discretion the action of the trial court will be sustained.

United States v. Leach, 429 F.2d 956, 963 (8th Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971).

We find no abuse of discretion here and, therefore, reject this contention.

Affirmed.