UNITED STATES of America,
Appellee,

v.

Martin F. BURKE, Appellant.

No. 888, Docket 75–1021.

United States Court of Appeals,
Second Circuit.

Argued April 8, 1975.

Decided May 15, 1975.

Thomas P. Smith, Asst. U. S. Atty. (Peter C. Dorsey, U. S. Atty., D. Conn., of counsel), for appellee.

David S. Golub, West Hartford, Conn., for appellant.

Before FRIENDLY and FEINBERG, Circuit Judges, and LASKER, District Judge.*

FRIENDLY, Circuit Judge:

Martin Burke appeals from a judgment of the District Court for Connecticut convicting him, on a plea of guilty, of unlawful possession of an unregistered, sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871.[1] The basis for appeal is an alleged error of Chief Judge Clarie in denying, without an evidentiary hearing, a motion to suppress the shotgun because of the asserted invalidity of the search warrant under which the gun was seized from Burke's home in Hartford.

■■ We deal preliminarily with the question whether the issue is properly before us. We said in United States v. Doyle, 348 F.2d 715, 718 (2 Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15

---

* Of the District Court for the Southern District of New York, sitting by designation.

1. Burke was sentenced to two years imprisonment, execution of which was suspended, and placed on three years probation.

L.Ed.2d 84 (1965), with citation of abundant supporting authority, that

> [t]he cases are legion that "[a] plea of guilty to an indictment is an admission of guilt and a waiver of all non-jurisdictional defects."

However, we recognized, as the Supreme Court apparently had done without discussion in *Jaben v. United States*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965), that an appeal would lie in such a case on an issue not going to guilt when there had been "[a] plea expressly reserving the point accepted by the court with the Government's consent." 348 F.2d at 719 (footnote omitted). In a number of later decisions this court has recognized the exception stated in *Doyle* —in some cases finding that the conditions spelled out in that opinion had not been met, *United States v. Mann*, 451 F.2d 346 (2 Cir. 1971); *United States v. Selby*, 476 F.2d 965 (2 Cir. 1973), in another finding that they had been, *United States v. Rothberg*, 480 F.2d 534 (2 Cir. 1973). See, *accord*, *United States v. D'Amato*, 436 F.2d 52 (3 Cir. 1970). Here Burke expressly reserved his right to appeal the denial of his suppression motion and the trial judge approved. The prosecutor said nothing. While arguably the lack of express consent by the prosecutor would be fatal under the language of *United States v. Mann*, *supra*, 451 F.2d at 347, in that case there was no approval by the judge, who indeed said, "I make no judgment at this time whether there is an appealable motion or whether any relief can be granted." We think that when a defendant has expressed a desire to plead guilty on condition that he be permitted to preserve the right to appeal on an issue not going to guilt and the judge tentatively indicates willingness to approve this, it is up to the prosecutor to object if he wishes; otherwise silence on his part is sufficient assent. Indeed the Government does not argue otherwise. We therefore proceed to the merits.

The search warrant, issued in Hartford by Judge J. Robert Lacey of the Circuit Court of Connecticut, authorized the search of Burke's apartment for a sawed-off shotgun therein described. Both the warrant and the Affidavit and Application for it were on Connecticut state forms. The Affidavit and Application was signed and sworn to by two members of the Connecticut State Police and a member of the United States Treasury Department, Alcohol, Tobacco and Firearms Division. In the portion of the Affidavit and Application following the description of the property to be seized, the name of the person said to possess it, and the identification of the place to be searched, there was a printed legend which says, in reference to the property, that it "is or has been or may be used as the means of committing the crime of". This statement had been completed with the following: "To receive or Possess a Firearm, which is not Registered to Him in the National Firearms Registration and Transfer Record. Title 26, USC Sec. 58–61d[5861(d)]." The allegations of probable cause were

4. That, on 8–21–73, at 0755 hrs., Lonnie C. Thompson, of 104 Kensington St., Htfd., Conn., was interviewed and submitted a written statement and will testify to the fact that on 8–20–73, at 1645 hrs., he was in Apt. # 3, on 279 Westland St., Htfd., Conn., resided in by Martin Burke, and had seen a sawed-off shotgun in the apartment's bedroom.

5. That, Thompson further states, that he has been told by Burke that the shotgun was stolen in a burglary.

6. That, as a result of the receipt of the information a check was conducted to search the National Firearms Register and Transfer Record, in Washington D. C. Special Agent Hampp was informed that no record could be found of any firearm registered to Martin Burke, of 279 Westland St., Htfd., Conn., this being a violation of Title 26, USC Sec. 58–61d[5861(d)].

Burke contends that the warrant was bad on its face because of the inadequacy of its showing of probable cause and

because of the failure of the warrant to comply with certain requirements of F.R.Crim.P. 41(c).

## I.

The contention of an inadequate showing of probable cause is bottomed on the absence from the affidavit of a recital that Thompson was known to the affiants to be a reliable informant, as Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), are claimed to require. Apart from the question of the precise standing of Spinelli after United States v. Harris, 403 U.S. 573, 581–83, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (qualification of Spinelli by Chief Justice Burger in portion of opinion joined by Justices Black and Blackmun), 585–86, 91 S.Ct. 2075 (Justice Black would overrule both Aguilar and Spinelli; Justice Blackmun would overrule Spinelli), see United States v. Unger, 469 F.2d 1283, 1286 (7 Cir. 1972), cert. denied, 411 U.S. 920, 93 S.Ct. 1546, 36 L.Ed.2d 313 (1973), there has been a growing recognition that the language in Aguilar and Spinelli was addressed to the particular problem of professional informers and should not be applied in a wooden fashion to cases where the information comes from an alleged victim of or witness to a crime.

Indeed any other view would mean that, despite the 1972 amendment to F.R. Crim.P. 41(c) to the effect that "[t]he finding of probable cause may be based upon hearsay evidence in whole or in part," it would generally be impossible to use hearsay statements of victims or witnesses since ordinarily they would not be previously known to the police.

A pioneering case in this development was McCreary v. Sigler, 406 F.2d 1264, 1269 (8 Cir.), cert. denied, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969), decided within a few weeks after Spinelli. Judge Clark's opinion in United States v. Bell, 457 F.2d 1231, 1238–39 (5 Cir. 1972), dealing with an arrest warrant, contains a particularly good exposition, which we quote in the margin.[2] To the same effect are United States v. Mahler, 442 F.2d 1172, 1174–75 (9 Cir.), cert. denied, 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971); United States v. Unger, supra, 469 F.2d at 1287 n.4—an opinion we prefer to the later decision of a divided Seventh Circuit panel in United States ex rel. Saiken v. Bensinger, 489 F.2d 865 (7 Cir. 1973); United States v. McCoy, 478 F.2d 176, 179 (10 Cir.), cert. denied, 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62 (1973); and Cundiff v. United States, 501 F.2d 188, 189–90 (8 Cir. 1974). Our own cases are in accord. In United States v. Sultan, 463 F.2d 1066, 1068–69

2. Although there is much sound and fury between the parties as to the existence of probable cause to arrest, we choose not to venture into the mostly visceral concept of probable cause, for a specter has arisen in this case that deserves to be laid to rest. It is now a well-settled and familiar concept, as enunciated by Aguilar and Spinelli, that supporting affidavits in an application for a search warrant must attest to the credibility of an informant and the reliability of his information. See also United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). We have discovered no case that extends this requirement to the identified bystander or victim-eyewitness to a crime, and we now hold that no such requirement need be met. The rationale behind requiring a showing of credibility and reliability is to prevent searches based upon an unknown informant's tip that may not reflect anything more than idle rumor or irresponsible conjecture. Thus, without the establishment of the probability of reliability, a "neutral and

detached magistrate" could not adequately assess the probative value of the tip in exercising his judgment as to the existence of probable cause. Many informants are intimately involved with the persons informed upon and with the illegal conduct at hand, and this circumstance could also affect their credibility. None of these considerations is present in the eyewitness situation such as was present here. Such observers are seldom involved with the miscreants or the crime. Eyewitnesses by definition are not passing along idle rumor, for they either have been the victims of the crime or have otherwise seen some portion of it. A "neutral and detached magistrate" could adequately assess the probative value of an eyewitness's information because, if it is reasonable and accepted as true, the magistrate must believe that it is based upon firsthand knowledge. Thus we conclude that Aguilar and Spinelli requirements are limited to the informant situation only.

(footnote omitted).

(2 Cir. 1972), we upheld the sufficiency of an affidavit in a bankruptcy fraud case where the showing of probable cause consisted primarily of a hearsay statement by a cousin of the defendant that the latter had told him that assets of the bankrupt were being concealed from the trustee in the premises proposed to be searched. More recently we have upheld a district court in finding probable cause to arrest on the basis, *inter alia*, of hearsay statements of a participant in the crime despite the absence of evidence that he had been a reliable informant, saying:

> To require a showing of previous reliability by such a person would, as in the case of a victim or a witness, see Wisconsin v. Paszek, 50 Wis.2d 619, 184 N.W.2d 836 (1971), make his information totally unavailable, despite the peculiar likelihood of its accuracy. Such information is *toto coelo* removed from a "meager report" that "could easily have been obtained from an offhand remark heard at a neighborhood bar", as to which prior history of providing accurate information is required. Spinelli v. United States, 393 U.S. 410, 417, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969).

United States v. Miley, 513 F.2d 1191, 1204 (2 Cir. 1975).

Viewed in the light of these decisions, the affidavit was sufficient; it made evident that Thompson had been in the bedroom of Burke's apartment and had talked with Burke about the gun, or at least that he had said so. See United States v. Sultan, *supra*, 463 F.2d at 1068. To be sure, it would have been better if the affidavit had recited how Thompson had come to see and hear what he did and still better if there had been an affidavit by Thompson himself, as in Ignacio v. People of Territory of Guam, 413 F.2d 513 (9 Cir. 1969), cert. denied, 397 U.S. 943, 90 S.Ct. 959, 25 L.Ed.2d 124 (1970), and United States v. Rajewich, 470 F.2d 666, 668 (8 Cir. 1972), but it is clear to us that the magistrate had "a ' "substantial basis" for crediting the hearsay.' United States v. Harris,

*supra*, 403 U.S. at 581, 91 S.Ct. [2075] at 2080 (plurality opinion)." United States v. Sultan, *supra*, 463 F.2d at 1069. It is true also that Thompson could have been lying to the affiants, that the affiants could have been lying to the judge, or both. But such risks are inherent in any system allowing, as it must, that search warrants may be issued on something less than a full trial of the existence of probable cause. As explained by Judge Clark, see fn. 2, the affidavit gave the "neutral and detached magistrate" something he could permissibly determine to constitute probable cause. And as Mr. Justice Frankfurter noted in Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), he "need not have been convinced of the presence of narcotics [here the unregistered weapon] in the apartment"; it is sufficient if "there was substantial basis for him to conclude that narcotics were [here the weapon was] probably present in the apartment."

## II.

The search warrant, which, as stated, was on a Connecticut form, did not conform with the requirements of F.R. Crim.P. 41(c) in three respects:

(1) Whereas the Rule requires that "[t]he warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States," the warrant was directed to "any Police Officer of a regularly organized police department or any State Policeman to whom these presents shall come";

(2) Whereas the Rule requires that the warrant shall command the officer to make the search "within a specified period of time not to exceed 10 days," the warrant commanded the officers to make the search "within a reasonable time"; and

(3) Whereas the Rule requires the warrant to "designate a federal magistrate to whom it shall be returned,"

the warrant contemplated that the return be made to the issuing judge.

■ Any contention that Rule 41(c) never applies when the warrant is issued by a state judge would be clearly unsound. Rule 41(a) permits "a search warrant authorized by this rule" to "be issued by a federal magistrate or a judge of a state court of record within the district wherein the property is located, upon request of a federal law enforcement officer or an attorney for the government." The obvious reason for including judges of state courts of record was that they are far more plentiful than the small corps of federal magistrates. Nothing in the language or policy of Rule 41 suggests, however, that warrants issued by them at the request of a federal law enforcement officer are exempt from the Rule's content requirements.

■ On the other hand, the mere fact that property seized pursuant to the warrant of a state judge at the request of state law enforcement officers for violation of state law is offered in a federal prosecution does not implicate the requirements of the Rule; in such cases it is sufficient if the warrant meets the requirements of the Fourth Amendment. See United States v. Bowling, 351 F.2d 236 (6 Cir. 1965), cert. denied, 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966); Gillespie v. United States, 368 F.2d 1, 4 (8 Cir. 1968);[3] United States v. Scolnick, 392 F.2d 320, 323 (3 Cir.), cert. denied sub nom. Brooks v. United States, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968) (even when state law had been violated since "[t] he test is one of federal law, neither enlarged by what one state court may have countenanced, nor

diminished by what another may have colorably suppressed," quoting Elkins v. United States, 364 U.S. 206, 224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960)); United States v. Coronna, 420 F.2d 1091 (5 Cir. 1970).

The cases that have caused difficulty are those where warrants have been issued by state judges as the result of a mingling of state and federal law enforcement. A leading decision for applying Rule 41 requirements is Navarro v. United States, supra, 400 F.2d 315. This applied the requirement of Rule 41(a) that warrants issued by state judges must be issued by "a judge of a state court of record" to a warrant issued by a judge of a Texas state court not of record on the request of a San Antonio narcotics officer who then sought the aid of Federal Bureau of Narcotics officers. The federal officers joined in the search, received the narcotics, made the arrest, and brought the only charges that had yet been lodged against the defendant.[4] In Judge Wisdom's view, this was a "federal search" under Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927), and Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949):

> The crux of the doctrine is that a search is a search by a federal official if he had a hand in it * * *. It is immaterial whether a federal agent originated the idea or joined in it while the search was in progress. So long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it.

400 F.2d at 317 (quoting Mr. Justice Frankfurter's opinion in Lustig, supra,

---

**3.** We are not prepared, however, to accept the further suggestion in the *Gillespie* opinion that Rule 41 is "only a procedural prescription as to the issuance of warrants by the federal courts," 368 F.2d at 4, if that is meant to imply that Rule 41 can never have any bearing on *federal* warrants issued by state courts. On this we agree with Judge Wisdom's statement in Navarro v. United States, 400 F.2d 315, 318 n. 3 (5 Cir. 1968).

**4.** *Navarro* itself led to interesting sequelae. See *United States v. Navarro*, 429 F.2d 928 (5

Cir. 1970) (refusing to enjoin federal officers from turning over the same physical evidence for use in a subsequent state prosecution, but enjoining federal officers themselves from testifying in that proceeding); United States v. Navarro, 441 F.2d 409 (5 Cir. 1971) (officer who was state agent at time of search could testify at state trial despite subsequent federal employment and other federal employees could testify concerning chain of custody and the nature of the drugs seized).

338 U.S. at 78–79, 69 S.Ct. 1372). While federal officers had not attempted to avoid the requirements of Rule 41 by seeking the assistance of city officers and while federal and local officers ought, of course, to be encouraged to cooperate, "such cooperation should comply with the rules," since "[p]ermitting the continuance of the practice herein might well lead to a limited revival of the 'silver platter' practice." 400 F.2d at 319–20.

However, the Fifth Circuit has somewhat qualified *Navarro* in United States v. *Sellers*, 483 F.2d 37 (5 Cir. 1973). In this, a gambling case, the warrant had been issued by an Alabama judge, in this instance of a court of record, on a showing, as in *Navarro*, of probable cause that state but not federal law had been violated. In *Sellers*, as in *Navarro*, a federal official accompanied state officers in the search, and made use of the fruits for a federal prosecution; however, the defendants in *Sellers*, unlike

those in *Navarro*, were also being prosecuted by state authorities based upon the evidence disclosed by the search. The claim was that the warrant was invalid under Rule 41 in light of the holding in United States v. Brouillette, 478 F.2d 1171 (5 Cir. 1973), that a United States Commissioner may issue a warrant to federal officers only upon a showing of probable cause to believe that a *federal* crime had been committed. Since the only showing of probable cause to justify the search was that *state* law had been violated, appellants argued, the fruits of the search were not admissible in the federal proceeding. It would have seemed a sufficient answer that Sellers could not have it both ways—his argument on the score of *Brouilette* tended to show that warrant was *not* a "federal warrant" despite the federal officer's participation in the search—and indeed this seems to be what the court ultimately held, 483 F.2d at 44.[5] But the court had earlier spoken a bit more expansively,[6] and the Government here relies on a

5. Here the court said:

Moreover, we specifically decline to adopt any rule under our supervisory power that would require that state court warrants meet all of the Rule 41 procedural requirements whenever federal officers have sufficient evidence of federal law violations to obtain a federal warrant. Such a rule would not only serve no useful purpose, but it would also place officers acting jointly on the horns of a dilemma in deciding whether to charge a state or federal crime. Such officials should be free to make a considered choice based on the best available information and unencumbered by merely technical procedural rules.

(Footnote omitted).

6. The question presented here, where the search was conducted by federal and state officers under the authority of a warrant issued by a state court on the affidavit of a state officer which averred that evidence of a state crime might be found, is whether *Navarro I* requires the suppression of the fruits of that search in a federal prosecution because the warrant was not secured through procedures which complied in all respects with the requirements of Rule 41.

Properly read, Rule 41 grants the authority to designated judicial officers, federal and state, to issue federal search warrants. The authority granted to state courts under this rule is *in addition* to the state-vested power of those courts to issue a warrant upon a

showing that probable cause exists to believe a violation of state law has occurred. While Rule 41 sets out the procedure to be followed in issuing a warrant for a violation of federal law, it obviously should not be contemplated that the federal rule would purport to regulate the procedures through which state courts may issue search warrants predicated on violations of state law.

A federal court reviewing the sufficiency of a warrant issued by a state court, for the purpose of determining whether the fruits of a resulting search are lawful and hence admissible in a federal prosecution, must determine whether the warrant was issued as a federal warrant or as a state warrant. If the warrant was issued under authority of Rule 41 as a federal warrant clearly it must comply with the requirements of the rule. If, however, the warrant was issued under authority of state law then every requirement of Rule 41 is not a *sine qua non* to federal court use of the fruits of a search predicated on the warrant, even though federal officials participated in its procuration or execution. The products of a search conducted under the authority of a validly issued state warrant are lawfully obtained for federal prosecutorial purposes if that warrant satisfies constitutional requirements and does not contravene any Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers.

*Id.* at 43.

passage just prior to the court's ultimate holding, 483 F.2d at 44:

> The proper test to be applied is whether a particular Rule 41 standard is one designed to assure reasonableness on the part of federal officers, or whether the provision merely blueprints the procedure for issuance of federal warrants.[7]

However all this may be, we have no difficulty in concluding that the warrant issued by Judge Lacey here was "a federal warrant" which, as the *Sellers* court conceded, must comply with the requirements of Rule 41. The only crime alleged in the Affidavit and Application was a federal crime, the violation of the National Firearms Registration Act. The Government argues that the affidavit disclosed a case within Connecticut General Statutes § 54–33a(b)(2), authorizing a search warrant where there is probable cause to believe that the property to be seized was stolen, and perhaps also § 54–33a(b)(1), authorizing a search warrant where there is probable cause to believe there is property "possessed . . . or intended for use or which is or has been used or which may be used as the means of committing any criminal offense," since a sawed-off shotgun is "inherently likely" to be so used. The argument continues that because "the instant warrant may just as easily . . . be viewed as a state warrant," the officers' hasty selection of a particular statute should not result in "an ironclad characterization" of the warrant as a federal one. But Judge Lacey had not been asked to find probable cause under the Connecticut statute and might not have done so. The warrant, sought by a *federal* law enforcement officer, along with state officers, for a particular fed-

eral offense, is far more clearly a federal warrant than those in either *Navarro* or *Sellers*.

The Government argues that even if this be so, the provisions of Rule 41 that were violated were not ones "designed to assure reasonableness on the part of federal officers," but "merely blueprint the procedure for issuance of federal warrants", see United States v. Sellers, *supra*, 483 F.2d at 44, a phrase that has been picked up in a dictum in United States v. Sturgeon, 501 F.2d 1270, 1275 (8 Cir. 1974). However appropriate the quoted language was to the unusual contention made by Sellers, based, as it was, on a strained interpretation of *Brouillette*, where federal agents seeking a warrant from a federal magistrate to search for evidence of a federal crime in fact alleged facts which showed only commission of a state crime and thus gave the magistrate nothing upon which to base a finding of probable cause for purposes of exercising his authority to grant a federal warrant, we have some difficulty in applying it here. We must assume that the provisions of Rule 41 here in question were included by the Supreme Court for some policy reasons, although these clearly are not of anything like the same importance as the need for finding probable cause and for particularity of description. While the history indicates that the requirements that, even though the warrant was issued by a state judge, it should be directed to "a civil officer *of the United States* authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States" (emphasis supplied) and that return should be made to a designated *federal* magistrate may have been rather accidental,[8] they can be taken to

---

7. The court continued:

> The case *sub judice* presents a paradigm of the latter class of requirements. The federal crime essential of *Brouillette* is a recognition of the inherent limits of the authority granted by Rule 41 to federal and state magistrates to issue federal search warrants. It does not exist to limit the activities of federal officers when they cooperate with state

officers. We decline to apply this particular Rule 41 requirement to state warrants.

8. The original version of Rule 41(c), adopted pursuant to the Act of June 29, 1940, ch. 445, 54 Stat. 688, effective March 21, 1964, contains in substance the requirements of the current rule with respect to the warrant's being directed "to a civil officer of the United States" and of designation of the federal judi-

be of a piece with the requirement, added by the 1972 amendment to Rule 41(a), that "a federal law enforcement officer or an attorney for the government" must request its issuance. The Supreme Court evidently wishes to limit state participation in "federal warrants" to issuance by a state judge and to see to it that the warrant is executed by a federal officer and return made to a federal magistrate. The requirement that the executing officer be named in the warrant serves other more important interests. See United States v. Soriano, 482 F.2d 469, 478 (5 Cir. 1973),[9] modified in respects not here material on rehearing en banc, 497 F.2d 147 (5 Cir. 1974). The requirement that the search be made within a specified period not to exceed ten days represents another 1972 change intended both to cure an inconsistency with a now-deleted time requirement of Rule 41(d) and to substitute a fixed period instead of the vague term "forthwith". See Advisory Committee Note quoted in 8A Moore, Federal Practice ¶ 41.01[3], at 41–8 to 41–9 (1975). Each of the three provisions here violated is thus a "Rule-embodied policy designed to protect the integrity of the federal courts *or to govern the conduct of federal officers*" (emphasis supplied), a test enunciated in another portion of the *Sellers* opinion, 483 F.2d at 43.

However, this conclusion does not demand a decision in Burke's favor. The Government argues with more persuasiveness that the violations of Rule 41 here shown were not of sufficient consequence to justify use of the exclusionary rule.[10] It says in brief, although there is no proof of this in the record on appeal, that in fact the federal agent was one of those who set about to execute the warrant, see *infra*; that this was done on the same day that the warrant issued; that a copy of the warrant and in inventory of the seized property were left at Burke's apartment; and that a return was made to the issuing court by a state officer on the following day.

There is relatively little case law on the question how far the failure of a warrant to conform to provisions of Rule 41 other than those concerned with the constitutional requirements of probable cause and particularity of description will trigger the exclusionary rule. While *Navarro* applied the exclusionary rule, the defect there was basic; since the issuing judge was not of "a state court of record", there was in effect no warrant at all for federal purposes. In United States v. Ravich, 421 F.2d 1196, 1201–02 (2 Cir.), cert. denied, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970), we declined to exclude evidence seized in a nighttime search of hotel rooms under a

cial officer to whom it shall be returned. The Advisory Committee Notes say only that "[t]his rule is a restatement of existing law, 18 U.S.C. 613–616, 620; Dumbra v. United States, 268 U.S. 435, [45 S.Ct. 546, 69 L.Ed. 1032] [1925]." See Advisory Committee Note quoted in 8 Moore, Federal Practice ¶ 41.01[2], at 41–5 (1975). *Dumbra* dealt generally with the requirements of *probable cause* in the context of a search warrant issued under the National Prohibition Act. The statutes referred to were enacted as part of an act dealing generally with espionage during the First World War, Act of June 15, 1917, ch. 30, 40 Stat. 217. Section 6 of Title XI of that Act, 40 Stat. 229, provided that "the judge or commissioner," if satisfied by the showing of probable cause, must issue a search warrant "to a civil officer of the United States" and command the officer to bring the property seized "before the judge or commissioner." Searching legislative history still further, one finds that the title of the Espionage Act on search warrants was "based upon the New

York law on this subject and follows generally the policy of that law." H.R.Rep. No. 69, 65th Cong., 1st Sess. (1917), quoted in 55 Cong.Rec. 3307 (1917).

**9.** These include the fixing of responsibility if the warrant is not executed, enabling the magistrate to make a determination before the search that an appropriate officer will serve the warrant, providing a record for any judicial determination after the search with respect to whether the authorized officer conducted the search, and helping the person whose premises are searched to guard against searches conducted by imposters.

**10.** The Government has chosen to cast this argument as a challenge, for which we perceive no basis, to Burke's "standing". Insofar as the argument rests on a passage in United States v. Gannon, 201 F.Supp. 68, 73 (D.Mass. 1961), we agree with the comments of the Fifth Circuit in United States v. Soriano, *supra*, 482 F.2d at 478.

warrant from which the necessary authorization for nighttime searches,' F.R. Crim.P. 41(c), had been omitted; we held the case to be within F.R.Crim.P. 52(a), directing that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded," since the omission was inadvertent and the searched premises were empty of people and were known to have been. And in United States v. Soriano, *supra*, 482 F.2d at 478–79, the court refused to exclude evidence when the warrant failed to state the name of the executing agent but there was testimony that the magistrate had been informed of this and that the agent had displayed his credentials in executing the warrant. The provisions of the American Law Institute's Model Code of Pre-Arraignment Procedure, Official Draft No. 1, July 15, 1972, are of interest. Although the Code requires that a search warrant shall be addressed to and authorize execution by a named officer, shall require that it be returned to the *issuing authority* within a specified period of time (not more than five days after execution of a warrant), and shall provide that the warrant shall

be executed within five days, § SS220.-2(1), (2)(g), and (3), deficiencies on the face of the warrant in these respects are not among the illustrative grounds for a motion to suppress listed in § SS290.-2(1)(b).[11]

 In United States v. Dunnings, 425 F.2d 836, 840 (2 Cir. 1969), cert. denied, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970), we characterized the exclusionary rule, as applied in Fourth Amendment cases, as being "a blunt instrument, conferring an altogether disproportionate reward not so much in the interest of the defendant as in that of society at large." For that reason courts should be wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude.[12] Without assuming to make a definitive formulation, we think that, except in a case like *Navarro* where, if the court was right in holding that Rule 41 applied, the defect made what was done in effect an unconstitutional warrantless search, violations of Rule 41 alone [13] should not lead to exclusion unless (1) there was "prejudice" in

---

11. A note to § 290.2 in Proposed Official Draft, April 15, 1975, states:

Subsection (1) specifies that a motion to suppress may be based upon a violation of any provision of the Code, and then lists, for descriptive purposes, the principal grounds upon which such motions have been, or are likely to be, based.

The Commentary at 219 of Official Draft No. 1 and 563–64 of the Proposed Official Draft of the completed Code states:

With few exceptions, the Code contemplates exclusion only where the defect is of constitutional dimension. If the things seized were not lawfully subject to seizure, or if the issuing official had no authority to issue the warrant, plainly exclusion is called for. On the other hand, defects in the issuance process or the contents of the warrant do not support a motion to suppress unless they are of such magnitude as to trigger the "probable cause" and "particularly describing" limitations of the Fourth Amendment.

The important exceptions to this are execution of the warrant at a time not authorized therein or at nighttime or more than five days after issuance without the findings necessary thereto (but not the failure of the warrant to re-

quire execution within five days), execution of the warrant by an officer who, prior to entry, fails to give notice of his authority and purpose unless he has reasonable cause to believe that such notice would endanger successful execution, and a search exceeding the scope of the warrant.

12. In contrast to cases involving confessions or identifications, where exclusion not only may tend to enforce decent police practices but may prevent the introduction of unreliable evidence, exclusion in Fourth Amendment cases generally can serve only the former function. See Linkletter v. Walker, 381 U.S. 618, 638, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Tehan v. United States ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Schneckloth v. Bustamonte, 412 U.S. 218, 242, 93 S.Ct. 2041, 36 L.Ed.2d 854 (opinion of the Court), 256–57, 93 S.Ct. 2041 (concurring opinion of Mr. Justice Powell) (1973).

13. In light of Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), it has been generally understood that the exclusionary rule applies to violations of 18 U.S.C. § 3109, the "knock" statute. See United States v. Manning, 448 F.2d 992, 1001–02 (2 Cir.) (en banc), cert. denied, 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971).

the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed,[14] or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.[15] Here we can see no ground at all for thinking that Judge Lacey would not have been quite as willing to issue a warrant calling for execution by the federal agent and a return to a federal magistrate and within ten days rather than simply within a reasonable time. Similarly the use of the state rather than a federal form of warrant[16] seems to have been the result not of deliberate intent to flout Rule 41 but of understandable confusion of what it required. We have no reason to doubt that, now that federal law enforcement officers in Connecticut have been instructed what is demanded when they seek a "federal warrant," they will comply.

While it might have been better if the district court had offered to allow Burke to go into these matters at a hearing, counsel has made no claim that he could offer evidence that would bring the case within our formulation of circumstances making it appropriate to apply the exclusionary rule to the infractions of Rule 41 here at issue.[17] We see no purpose in remanding for a hearing when counsel

has made no showing of reason to think that, under our view of the law, any purpose would be served thereby.

Affirmed.

14. What we mean is neatly illustrated by comparing two cases of nighttime searches, United States v. Ravich, *supra*, 421 F.2d 1196, and United States ex rel. Boyance v. Myers, 398 F.2d 896 (3 Cir. 1968). It was plain in *Ravich* that the judge who issued the warrant intended to allow a nighttime search of the vacant motel room and would have signed a warrant providing for this rather than one that was silent on the subject. The warrant in *Boyance* was limited on its face to "search in the daytime" and there was nothing to indicate that the justice of the peace intended or could have been persuaded to authorize a search of a home at 2:30 a. m. Similarly when a warrant is executed after the specified period has elapsed, there is usually no way to tell whether the issuing officer would have permitted this.

15. Although in most cases the result under our formulation will not differ from that under the "blueprint" test suggested in United States v. Sellers, *supra*, 483 F.2d at 44, and United States v. Sturgeon, *supra*, 501 F.2d at 1275, we consider it to be a preferable approach.

16. It should be noted that the "illustrative" form of warrant, Form 15, appended to the Rules of Criminal Procedure, is defective in failing to provide for "a specified period of time not to exceed 10 days" as required by Rule 41(c).

17. Indeed, it seems quite likely that at a hearing the Government could show that reliance on the search warrant was unnecessary. Its brief tells us that the federal agent and one of the Connecticut policemen heard a gunshot as they entered Burke's apartment, that a Connecticut trooper who was positioned outside the apartment building saw a man leave the apartment at the same time, and that, once inside the apartment, the federal agent and the Connecticut policeman saw Burke lying wounded on the floor with a sawed-off shotgun at his side. On such facts the entry might well be justifiable as based on reasonable cause to believe that a state crime had been committed and the seizure on the basis that the gun was in plain view. Cf. United States v. Hall, 348 F.2d 837, 841–42 (2 Cir.), cert. denied, 382 U.S. 947, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965).