## ADAMS, (UNITED STATES v.)

[See United States v. Adams, Case No. 14,421.]

---

## ADAMS, (UNITED STATES LIFE INS. CO. v.)

[See United States Life Ins. Co. v. Adams, Case No. 16,792.]

---

## ADAMS, (WALLER v.)

[See Waller v. Adams, Case No. 17,107.]

---

# Case No. 67.

### ADAMS v. WEST ROXBURY.

[1 Hask. 576.][1]

Circuit Court, D. Massachusetts. Sept., 1875.

MASTER AND SERVANT—NEGLIGENCE OF MASTER— DEFECTIVE APPLIANCES.

1. A master failing to use due care and prudence, either in furnishing his servant a suitable kind or quality of explosive for blasting, is guilty of negligence.

2. In determining such care and prudence, it may be considered how far such kind of explosives was in general use and ordinarily con-

---

[1][Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

sidered safe and proper for the purpose, and how far the particular brand or manufacture of the explosives furnished was generally considered a safe article by those using it.

3. It would be want of care and prudence for the master to furnish an explosive of inferior quality on account of its cheapness, if such article from its inferior quality is more dangerous to use than an explosive of good quality. The more dangerous the instrument, the more care is required in providing it.

4. A master, by furnishing an explosive known to him to be dangerous and unsafe for the use to which it is to be put, is guilty of negligence.

5. A superintendent of the streets of a city or town, having authority to employ servants for the municipality to work upon the roads under his direction, bears the relation of vice principal to such servants, and negligence upon his part becomes the negligence of his principal.

6. A servant cannot recover for injuries sustained in the employment of his master, unless they were occasioned by the negligence or want of due and proper care and prudence of the latter.

At law. Action of tort, to recover damages for personal injuries sustained in the service of the defendant town, from the unaccountable discharge of an explosive furnished for use in blasting. The case was tried upon the general issue and the defendant had a verdict in its favor, whereupon the plaintiff moved for a new trial for misdirection of the court. [Motion overruled.]

Benj. F. Butler, for plaintiff.

R. M. Morse, Jr., for defendant.

FOX, District Judge. The plaintiff claims to recover damages in this action for personal injuries of a very serious nature, sustained by him from an explosion of certain electrical exploders which had been obtained by the defendant's agents, to be used in blasting with dualin. There is but little controversy as to the material facts. Clement Herschell was one of the superintendents of streets in West Roxbury, in the year 1873, and had the charge of the work of preparing stone to be used in repairing roads. In behalf of the town, he employed in this business various persons, and among others the plaintiff, an engineer. to run the engine to drive the machinery for crushing the stone, which was first blasted from the ledge. On the afternoon of February 3, Herschell directed the foreman to procure at Neponset some dualin, together with fifty exploders to be used in the blasting. They were obtained by him and brought to the place in a paper box that evening, and put in a chest with the dualin; there being some powder in the chest, the plaintiff put the box which contained the exploders on a shelf in the engine room. They remained there until the next morning, when they were examined by the foreman, and finding that the wires were shorter than he wanted, he, concluding to return them, put them back into the paper box, and while tying the string around it, holding the box between his knees, an explosion occurred. and thereby the plaintiff, who was standing

in front of the foreman, was injured. The sight of one of his eyes is nearly destroyed, and he also sustained other damages, and for these injuries, this action was brought, and was tried before me at the last fall term; a verdict was rendered for the defendant, which the plaintiff now moves may be set aside, for alleged erroneous rulings and instructions to the jury.

The principal question in the cause is, what obligations and liabilities did the defendants assume towards the plaintiff in providing materials for the business, he being in their employment at the time as an engineer in charge of the engine, which drove the machinery for crushing the stone after it was blasted from the ledge? The instructions given to the jury declared that it was a matter of care and prudence in providing safe and proper materials, and whether there was any negligence in that behalf, and that the defendants were not to be held responsible for absolute certainty as to their safety. The language of the instructions is as follows: "The defendants were bound to use reasonable care and precaution to procure safe and proper material for the use of their servants, and if from want of such care and precaution, the plaintiff has sustained injury, the defendants are accountable; but if they exercised such care in the selection and procurement of material, they do not become insurers of the safety of their servants from injury in using such material. In determining the question of due care, the jury will first determine, whether, under the circumstances, it was proper care and precaution to use electrical exploders in blasting at the time and place contemplated. This involves the propriety of the use of the article for blasting. In deciding upon this point the jury will determine to what extent these exploders had come into general use at that time, and how far by the persons engaged in the business of blasting they were ordinarily considered a safe and proper article to be used for this purpose. Was it negligence and want of due care to use electrical exploders in blasting, or were they proper, fit articles to be so employed? If the jury find that they were generally and ordinarily considered a safe and proper article to be used in blasting, and that there was no negligence or want of due care on the part of the city in their use, then the city was bound to take due care to obtain that kind of exploders which were safe and properly made, and they would have no right to purchase those which were more dangerous and liable to explode, because they could obtain them somewhat cheaper. The more dangerous the instrument employed, the more care should be taken to obtain as safe an article as possible properly manufactured. The jury therefore will determine whether these exploders, Brown's, were, by the persons accustomed to use exploders and by those engaged in blasting, generally deemed to be a good, safe article of the kind used and manufactured, and as safe as any which could with care be obtained in the market. The jury will also determine what Herschell's opinion and knowledge was of the nature and character of these exploders, because if they should find that he deemed them unsafe and improper to be used, then it would be negligence and want of due care on his part to provide such material for their use. The negligence of Herschell in this respect, would be the negligence of the town, for which it would be chargeable." "If the jury find that the defendants were justified in obtaining for the use of their workmen Brown's exploders, and that those procured were in all respects apparently safe and properly manufactured, but that by reason of some secret unknown defect in one or more of them, which was not discoverable by the most careful examination, they exploded without any known cause, the defendant would not be accountable for the damage occasioned by said explosion. It would be as between these parties a simple accident, for the consequences of which the defendant would not be accountable to the plaintiff. If the jury find it was negligence and want of care on the part of the defendant, either to use electrical exploders at all, or to have procured in the manner they did this particular kind of exploder, the manufacture of Brown, then the defendants are accountable to the plaintiff for the damage occasioned by such negligence. But if on the contrary the jury think there was no want of ordinary care and prudence in procuring in the manner they did, for the use of their workmen, this particular manufacture of exploder, then the plaintiff would fail to establish negligence on the part of the defendants, and he cannot sustain his action."

These instructions held the defendants chargeable with the knowledge of Herschell as to the safety of these exploders, and that if he was guilty of any negligence in relation to them, the defendants would be accountable therefor; that their liability depended entirely on whether due care and precaution had been used in the selection and use of the exploders; that the plaintiff could only sustain his action by establishing more or less negligence on the part of the defendant. These instructions are found, on an examination of the authorities, to have their entire support; not one has been met with, in any way in conflict with them.

It is hardly necessary to refer to any of them, and a few only will be presented. Priestley v. Fowler, 3 Mees. & W. 5; Wright v. New York Cent. R. Co., 25 N. Y. 566; Patterson v. Wallace, 1 Macq. H. L. Cas. 748; Tarrant v. Webb, 18 C. B. 801; Gilman v. Eastern R. Corp., 10 Allen, 238. In which last case it is held that a master is bound to use ordinary care in providing structures and engines, and is liable to any of his servants for his negligence in this regard.

In Ford v. Fitchburg R. Co., 110 Mass. 255, the instruction was: "A corporation is required to use due care in supplying and maintaining suitable instrumentalities, for the performance of the work or duty which it requires of its servants, and is liable for damages occasioned by neglect or omission to fulfill this obligation, whether it arises from its own want of care, or that of its agents intrusted with that duty. * * * The obligation of a corporation, so far as respects those in its employment, does not extend beyond the use of ordinary care and diligence. By ordinary care and diligence is meant, such as men of ordinary sense, prudence and capacity, under like circumstances take, in the conduct and management of their own affairs. This varies according to circumstances as the risk is greater or less, and must be measured by the character and risks and exposures of the business." These instructions were sustained by the full court.

In Wonder v. Baltimore & O. R. Co., 32 Md. 417, it is decided that "all that can be required of the master and for the neglect of which he is responsible to the servant is, that he shall use due and reasonable diligence in providing safe and sound machinery. * * * The master is not liable to his servant for any injury occasioned by a defect of machinery furnished to the latter to operate, unless he was negligent in providing such machinery, or if he knew of the defect, in omitting to warn the servant of its existence."

The same rule is applicable to the selection of servants as to providing of proper materials and instruments, and in Baulec v. New York & H. R. Co., [59 N. Y. 359, December, 1874,] it was held, "that when reasonable precautions and efforts are used to procure safe and skillful servants, and without fault one is employed through whose incompetency damage occurs to a fellow servant, the master is not liable."

The following instruction was requested by plaintiff, but was refused by the court, viz.: "That if the agent of the town in the course of blasting stone for the use of the town, for which he was employed, procured electric exploders, which were in fact dangerous to be used, but the safety or propriety of using the particular kind of which could not be determined by any inspection whatever, so as to be known whether they were dangerous or proper to be used or not, and the plaintiff whilst in the proper discharge of his duty using due care was injured by said exploders, the town was liable to him for the damage caused thereby." In the view of the court, this instruction would impose on the master the responsibility of absolute safety, and render him the guarantor in that respect of the dangerous implements furnished by him to his servants to be used in their employment, in the labor for which they were engaged, and wholly ignores all questions of negligence and due care in the selection of such implement. It would hold the master accountable if the exploders were in fact imperfect and dangerous, although by the greatest care, it would have been impossible to discover that they were defective and dangerous; and this is but another form in fact of stating the proposition, that if by the most careful scrutiny, the defective exploders could not have been detected, if the defendant saw fit to obtain exploders, and one proves dangerous and injures one of the servants, the master is to be held accountable for the consequences.

In this proposition is entirely wanting the great elements which the jury were by the instructions called upon to find established before they could exonerate the defendants, viz. that it was not negligence and want of care to use electrical exploders in blasting, and that there was not any want of care in obtaining for this purpose the Brown exploders. If these elements should be incorporated into the instructions, it would then substantially affirm as the rule of law in such a case, that although the master was entirely justified in procuring and using Brown's exploders, still if a single one should prove defective and cause an injury to one of the servants, although by the extremest care and diligence the defect could not be discovered, the master would be accountable for injuries occasioned by such defects.

Negligence or want of care is not affirmed by this rule as a necessary element to create the master's liability; and when these are wanting, it is clear, from all the authorities, a liability to indemnify the servant does not exist, if he sustains an injury.

The argument of the learned counsel for the plaintiff is, that because the exploders proved unsafe, although this could not be determined by the most careful scrutiny, the risk in such case should be borne by the master; but a master's accountability in such a case is not changed by the increase of risk, or the dangerous character of the instruments employed. The degree of care demanded in one case, may be very much greater than in the other, and the more dangerous the article in question, the greater should be the care and precaution; or as the jury were instructed, the more dangerous the instrument employed, the more care should be taken to obtain as safe an article as practicable, properly manufactured.

The use of exploders in blasting, not being as the jury have found, negligence per se, and the town having procured exploders, which at that time, by persons accustomed to their use, and by those who were engaged in blasting, were generally deemed to be a good safe article of the kind used and manufactured, and as safe as any, which with care could be procured in the market, and there being no defect discoverable by the greatest scrutiny, what higher degree of care could be required of the master? What test should be applied to discover this secret

defect? It would seem that none could be suggested, which would not involve the discharge of the exploder, and thereby cause its entire destruction. These exploders were a part of a box taken from the depository at Neponset, and there is no evidence to show that any of those left in the box at Neponset ever proved defective, and the probability is, that in the present case, a single bad one caused the explosion of all the others, so that nearly the entire quantity might have been destroyed in testing them, without discovering the one which caused the mischief. No reasonable test could therefore have been applied, which with any certainty could have discovered that any of them were defective.

If a master should procure a box of percussion caps from a well known respectable manufacturer, which were by the community at large, generally considered safe and free from danger, would it be expected of him that he should use up a large portion of the contents of the box in testing them before he put them in the hands of his servants for use? Could he not well rely on the standing and reputation of the maker of the article for his putting on the market a safe and proper cap, and if on careful inspection they were apparently all right, and no defect could be discoverable, should he be deemed guilty of negligence, if under such circumstances he procured and used them in his business?

It is difficult to discover any distinction between that and the present case, excepting, perhaps, it may be said that exploders were not so well known, and were of a more dangerous nature; but this as before stated only requires of the master greater care, and does not render him a guarantor of perfect safety in its use by his servants.

It is claimed that Herschell, the agent of the town, was well aware of the danger attending these exploders, and should therefore have advised the plaintiff of their being liable to explode without any apparent cause; but the plaintiff substantially admitted that he was aware of their character, as he testified that he had seen them used in blasting, and that the night before he was injured, he removed the box of exploders from the powder chest to a shelf in the engine room. The jury were instructed, "that the negligence of Herschell in not procuring a suitable article would be negligence on the part of the town, for which it would be chargeable; that they should determine Herschell's means of knowledge as to their safety, because if he deemed them unsafe, it would be negligence and want of due care to provide such material for the use of the workmen. It is a matter for you to determine, taking all of Herschell's statements, and what you find to have been his previous knowledge on this point, whether you can fairly charge him with negligence in having procured this kind of exploder." No

other instruction was requested on this branch of the case, and if counsel had desired any more specific, it should have been prayed for at the close of the charge. Whatever knowledge Herschell had as to their being dangerous was distinctly declared to be the knowledge of the town for the purposes of this trial, and if Herschell was not justified in their use, then the town was accountable and must answer for his negligence. In none of the authorities cited by the learned counsel is anything to be found in conflict with the rulings at the trial.

In Cayzer v. Taylor, 10 Gray, 274, the instruction given to the jury was that the implied contract between a master and servant is, that the master will use such care as a prudent and careful man in the same business would use in the selection and use of engines and appurtenances belonging thereto. If the defendant used an unfit engine and apparatus, and such use arose from want of ordinary care in the employer, and by reason of this want of care the injury was incurred, then the defendant would be responsible. This ruling was in strict conformity with that made in the present case and was sustained by the supreme court of Massachusetts.

In Spelman v. Fisher Iron Co., 56 Barb. 155, the court says: "Personal negligence is the gist of the action, and the master is liable where he knew or ought to have known of the defect which occasioned the injury."

In Ford v. Fitchburg R. Co., 110 Mass. 259, the language is: "The jury must have found that the defendant corporation did not exercise ordinary care and diligence in supplying and maintaining an engine safe to be used."

In Noyes v. Smith, 28 Vt. 64, it is said "that it is the duty of the master to exercise care and prudence, that those in his employment be not exposed to unreasonable risks and dangers;" and this principle is sustained by the court in Connolly v. Poillon, 41 Barb. 367.

In McGatrick v. Wason, 4 Ohio St. 566, it is said "that if the defect in the machinery could have been cured by the use of ordinary care then the master is liable." It is very clear that in all these cases the various courts recognize the same principles of law as were here given to the jury, viz.; that the defendants were bound to use reasonable care and precaution to procure safe and proper materials for the use of their servants, and if from want of such care the servant was injured the master would be liable.

The requested instruction derives no support from either of those decisions, but the rather declares the law to be entirely different, and would hold that if the absolute safety of the articles furnished cannot be determined by the most careful inspection, and in their use they should prove dangerous and injure the servant, the master would

be accountable therefor; that by their use he becomes an insurer of the servant's safety against the danger, although it is impossible to discover the defect in the article which is of the same character and description, and from the same manufacturer as those commonly made use of in the employment for which the servant is engaged. Such a liability is far in excess of that, which only requires due care and diligence to be shown to exonerate the master if injury ensues to the servant, and although in the present case a very serious injury has been sustained by the plaintiff, the court is not satisfied that any error occurred at the trial which entitles him to have his cause again presented to a jury. Motion overruled. Judgment on the verdict.