**UNITED STATES of America,**
**Appellant,**

v.

**Edward KRAWIEC, Defendant, Appellee.**

**No. 79–1617.**

United States Court of Appeals,
First Circuit.

Argued May 9, 1980.
Decided Aug. 19, 1980.

578

George F. Kelly, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellant.

Michael O. Jennings, Springfield, Mass., with whom Cohen, Rosenthal & Price, P. C., Springfield, Mass., was on brief, for defendant, appellee.

Before CAMPBELL and BOWNES, Circuit Judges, and DAVIS,* Judge, U. S. Court of Claims.

DAVIS, Judge.

The Government appeals, under 18 U.S.C. § 3731 (1976), from an order of the District Court suppressing evidence in a federal criminal case against defendant-appellee Krawiec. That indictment charged the receipt, possession and purchase of 521 cartons of untaxed cigarettes (totaling 104,200 individual cigarettes) in violation of 18 U.S.C. §§ 2342(a) (Supp. II 1978) and 2344 (Supp. II 1978) (requiring, for federal prosecution, a quantity in excess of 60,000 untaxed cigarettes). The District Court suppressed most of the 521 cartons because, in its view, the state-court warrant authorizing the search for and seizure of those cartons did not comply with all the requirements of F.R.Crim.P. 41(b) (1979) for a fed-

* Sitting by designation.

eral warrant. We reverse on the ground that the warrant was properly a state warrant which did not have to fulfill all the special demands of a federal warrant.[1]

The pre-trial suppression hearing established the following facts: In the spring of 1979 Special Agent Richard Dotchin of the Springfield office of the federal Bureau of Alcohol, Tobacco and Firearms received information that defendant, a Massachusetts resident, was dealing in cigarettes which did not have the Massachusetts tax stamp. Dotchin worked with federal and state representatives. His investigation revealed that defendant might well be receiving at his home in western Massachusetts regular shipments from a North Carolina cigarette distributor. The agent wished to search Krawiec's home if he properly could. An Assistant United States Attorney advised Dotchin that the latter did not at that time have sufficient evidence that Krawiec's house contained the 60,000 untaxed cigarettes needed for federal prosecution. Dotchin then discussed the matter with a representative of the state's District Attorney because the laws of Massachusetts made the possession or receipt of untaxed cigarettes a crime without regard to such a minimum quantity.

In July 1979 Dotchin concluded that Krawiec was about to receive at home, through the mails, two parcels shipped by the North Carolina cigarette dealer, which Dotchin believed too small to show a federal violation. With the help of the local District Attorney's office, he obtained from the local state court judge a search warrant for the Krawiec home for the two parcels from North Carolina, together with correspondence relating to business between defendant and the North Carolina distributor. The application for the state warrant complied with the state law and the Constitution but did not contain information that a federal violation had occurred (i. e., that

defendant had at home more than 60,000 untaxed cigarettes).

At that time Dotchin was told by the Assistant United States Attorney that, even if the search warrant produced enough cigarettes to justify a federal prosecution, one would not necessarily follow. Conversely, the state prosecutor indicated that discovery of more than 60,000 cigarettes would not necessarily bar state prosecution.

In executing the state warrant, Dotchin had a team of federal agents, a state cigarette tax investigator, and local detectives. On entering the house, they found the two parcels, already opened, with untaxed cigarettes. A federal agent went upstairs and reported that he had seen numerous cigarette cartons, apparently containing untaxed cigarettes. Dotchin then proceeded upstairs and saw a large number of cartons.

Returning to the state District Attorney's office, Dotchin sought and obtained from the same judge of the same local court of record an additional search warrant for the cigarettes seen upstairs, and also a separate warrant for cigarettes in a van, parked in the Krawiec driveway, in which Dotchin had observed other cartons by looking through the window. These two additional warrants likewise complied with state law and the Constitution, but neither indicated that more than 60,000 cigarettes were involved or that there was a possible federal violation. Following the discovery of the mass of cigarettes in Krawiec's house [2] and van the federal and state prosecutors decided that the case should be presented to the federal court.

Defendant's federal indictment followed, and he moved to suppress the cigarette evidence obtained through the state-court warrants we have described. After the suppression hearing, the District Court upheld the first warrant for the two packages,

1. Both sides and the trial judge recognize that, if the judge's suppression order stands, there can be no federal prosecution because the cigarettes properly seized for federal purposes would number less than 60,000.

2. The returns of the three state-court warrants issued to Dotchin were made to the state court judge, but the cartons of cigarettes found in these searches were taken to and kept in the federal Alcohol, Tobacco and Firearms office in Springfield.

but granted the motion as to the second and third warrants. The court's position was that, after the larger amount of cigarette cartons was seen in the second story of the house, Dotchin's investigation lost its "state flavor" and in seeking the additional warrants he should have indicated that more than 60,000 cigarettes were probably present in the house and van—that he had a reasonable belief that a federal violation had occurred. The application and the warrant, not having the recitals needed to show such a probable federal violation, were not proper federal warrants and accordingly did not authorize the seizure of the mass of cigarettes found upstairs in Krawiec's house and in the van. The court thought, without demur from the prosecution, that the two cartons seized under the first, valid warrant were plainly insufficient for the federal violation charged.

We assume for this case, with *United States v. Brouillette*, 478 F.2d 1171 (5th Cir. 1973), that the District Court was right if the two warrants it rejected were in fact, or were required to be, federal warrants. *Brouillette* held that federal warrants had to comply with Rule 41 of the Federal Rules of Criminal Procedure which calls for the supporting affidavits to say, and the issuing magistrate to be satisfied, that there is probable cause to believe a *federal* crime has been committed.[3] Neither the warrants nor the supporting affidavits in this case revealed that more than 60,000 cigarettes were believed to be in Krawiec's house. Under the *Brouillette* principle, these warrants were not, and could not be, valid federal warrants issued under Rule 41.

■ But the question before us is whether the warrants here issued and executed were such federal warrants, or were required to be. The correct legal test is given, we hold, by a later Fifth Circuit opinion which took account of *Brouillette*. In *United States v. Sellers*, 483 F.2d 37, (5th Cir. 1973), *cert. denied*, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974)—a close-replica of the present case—the court dealt with a state-court warrant to search and seize materials relating to a charge of using a wire communication facility for the transmission in interstate commerce of wagering information. *Id.* at 41–44. The warrant was issued by an Alabama judge on probable cause showing a breach of state, not federal law, but the fruits of the search were admitted in a federal prosecution. The Court of Appeals assumed or held that (a) "there was sufficient federal involvement to require that the search be treated as a federal search," *id.* at 42; (b) state participation in the search was bona fide, *id.*; (c) if the warrant was issued under authority of Rule 41 as a federal warrant it must comply with the requirements of the rule (including *Brouillette*) *id.* at 43; but (d) if the warrant is issued by a state court under state law then every requirement of Rule 41 is not a *sine qua non* to federal court use of the fruits of a search predicated on the warrant "even though federal officials participated in its procuration or execution." *Id.*[4]

---

3. In July 1979, Rule 41 authorized (in subsection (a)) a search warrant recognized by the rule to be issued by a federal magistrate or a judge of a state court of record upon request of a federal law enforcement officer or government attorney. Subsection (b) provided that a warrant under the rule could be issued for "(1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense." Subsection (c)(1) detailed the requirements for issuance of an affidavit or warrant.

*Brouillette*, which involved using the facilities of interstate commerce to further a violation of state law, held that a federal warrant issued to a federal official by a federal court under Rule 41 was invalid if the supporting affidavit did not give factual support for the belief that the means of interstate commerce had been used for the violation. In that case the requesting federal officers did not state their reasons for believing that a federal crime had been committed. *See also* n.9, *infra*.

4. "The products of a search conducted under the authority of a validly issued state warrant are lawfully obtained for federal prosecutorial purposes if that warrant satisfies constitutional requirements and does not contravene any Rule-embodied policy designed to protect the

■ The *Sellers* court went on to hold that *Brouillette* recognized the inherent limits of the authority granted in Rule 41 to federal and state magistrates to issue federal search warrants, but held that the Rule did not in this respect limit the activities of federal officers when they cooperate with state officers to obtain a state warrant. *Id.* at 44. The court expressly declined to adopt any rule requiring state court warrants to meet all the Rule 41 procedural requirements (including *Brouillette*) "whenever federal officers have sufficient evidence of federal law violations to obtain a federal warrant." *Id.* The *Brouillette* rule was considered not to relate to the integrity of the federal courts or to govern the conduct of federal officers. The result was the rejection of the demand to suppress the fruits of that "joint federal and state search."[5]

■ On the record, this holding and these statements squarely fit the present case. There was at all relevant times ample basis for a state warrant. Massachusetts made illegal the possession of unstamped cigarettes of whatever amount. State and federal officers were involved together in the inquiry into the defendant's cigarette activities and they were present at the execution of the warrants. The court below itself found that Dotchin properly seized the two cartons that were the subject of the first state warrant.[6] Dotchin knew from the federal prosecutor that, even if more than 60,000 cigarettes were discovered at Krawiec's house, there would not necessarily be federal prosecution. On the other hand, Dotchin learned from the state prosecutor that there could still be a state prosecution if the cigarettes exceeded 60,000. Thus, even after the federal agent saw the larger amount of cigarettes upstairs in the home, he did not know for certain whether there would be a state or a federal proceeding. The state warrants he then sought and received complied fully with the state law and all constitutional requirements.

■ Dotchin, rather than a state officer, sought the three state warrants for Krawiec's house because he, as the chief investigator, was the affiant most familiar with the facts. Having obtained the first warrant, which the District Court found to be fully valid, Dotchin was best fitted to return to the same state court for the second and third warrants now in question. In *Sellers* a state officer executed the affidavit, but the court made nothing of that fact, calling the search a "federal search" at one point and a "joint federal and state search" at another. The opinion supported joint efforts by federal and state officers to cooperate together, unencumbered by merely technical procedural rules; if the warrant is a proper state warrant, then each and every requirement of Rule 41 is not necessary "even though federal officials participated in its procuration or execution." 483 F.2d at 43.[7]

---

integrity of the federal courts or to govern the conduct of federal officers." *Id.* at 43.

Decisions based on the court's belief that a state-issued warrant contravened a Rule 41 policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers include *Navarro v. United States*, 400 F.2d 315 (5th Cir. 1968) (search warrant issued by a state court not a court of record); and *United States v. Passero*, 385 F.Supp. 654 (D.Mass.1974) (federal and state officers received a warrant from the clerk of a state court, not from a judge of a state court of record).

5. *Sellers* has been followed in other circuits in *United States v. Harrington*, 504 F.2d 130 (7th Cir. 1974); *United States v. Sturgeon*, 501 F.2d 1270 (8th Cir.), *cert. denied*, 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974); and *United*

States v. Chavez, 603 F.2d 143 (10th Cir. 1979), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980).

6. Defendant-appellee attacks this finding that the first warrant was a state one, but the finding is by no means clearly erroneous and we cannot upset it. There is no attack, by the District Court or defendant, on any of the three warrants if they are considered state warrants, nor is there any challenge under Rule 41 other than the failure to show that more than 60,000 cigarettes were involved.

7. *United States v. Sturgeon, supra*, 501 F.2d at 1271–72, involved a state-court warrant for counterfeit United States money, obtained by Iowa and federal (Secret Service) officials, but the Court of Appeals, which upheld the warrant and the conviction, did not discuss the

The District Court upset the second and third state warrants because it believed that by that time Dotchin's investigation had lost its "state flavor" and, on becoming aware of the probability of a large quantity of cigarettes, Dotchin could and should have estimated the amount so that he could have told the state court by affidavit that he had probable cause to believe that in excess of 60,000 cigarettes were within the house.[8]  This postulate that, with sufficient evidence of a federal law violation to obtain a federal warrant, the federal agent should have complied with the *Brouillette* interpretation of Rule 41, flies in the face of the express *Sellers* ruling that that course is unnecessary.  We agree with *Sellers* that the principle applied by the court below "would also place officers acting jointly on the horns of a dilemma in deciding whether to charge a state or federal crime.  Such officials should be free to make a considered choice based on the best available information and unencumbered by merely technical procedural rules," *Id.* at 44.  As *Sellers* said, the *Brouillette* requirement may limit magistrates when they are plainly asked to issue a federal warrant, but the rule "does not exist to limit the activities of federal officers when they cooperate with state officers."  *Id.*  An inquiring federal agent who is not sure, as in this case, that any later prosecution will be federal should not be compelled to obtain from a state or a federal court a federal warrant with its special procedural requirements.

This is not a case in which the federal agent was deliberately trying to avoid the *Brouillette* requirements or to escape proceeding under Rule 41.  The District Court found that there was no bad faith on the part of any law enforcement official or the prosecution, and that Agent Dotchin is to be commended for having taken the cautious way at every juncture.  In the face of

this finding, which we accept, there is no occasion to consider what the conduct of federal officers should be if there is no doubt whatever that the only prosecution will be federal and that state cooperation is superfluous or a pretext.[9]

*Reversed.*

---

validity of the participation by the Secret Service agents.

8.  The District Court did not require that the warrant issue from a federal court.

9.  In *Brouillette*, the search warrant was obtained and executed by federal officers from a federal commissioner, and the opinion contains no indication that state officers participated in the search or seizure.  See n.3, supra.  The same is true of *Thomas v. United States*, 376 F.2d 564 (5th Cir. 1967).