UNITED STATES of America

v.

**Peter James CAIAZZO.**

**Crim. No. 86–0047–P.**

United States District Court,
D. Maine.

Dec. 18, 1986.

---

Paula D. Silsby, Asst. U.S. Atty., Portland, Me., for plaintiff.

James Boulos, Biddeford, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

GENE CARTER, District Judge.

Presently before the Court is Defendant Caiazzo's motion to suppress certain evidence seized under a search warrant issued by a judge of the State of Maine, County of York District Court on July 11, 1986. Defendant alleges as grounds for suppression three defects in this warrant: one, the supporting affidavit fails to establish a reasonable nexus between the place to be searched and the items to be seized; two, the warrant fails to describe with sufficient particularity the place to be searched; and three, the affidavit fails to establish reasonable grounds to justify a nighttime search.

### I. *Factual Background*

In the evening of July 11, 1986, Maine State Police Officer Langella prepared an affidavit in support of a search warrant. A judge of the State of Maine District Court issued the warrant that same evening. The warrant authorized the seizure of cocaine and other evidence of cocaine trafficking and authorized execution during the nighttime hours.

In preparing his affidavit, Officer Langella relied in large part on information he received from a confidential informant, about whom the officer alleged specific facts regarding the informant's previous reliability. In addition, Officer Langella relied both on information received through other parties regarding Defendant's activities and on facts ascertained through police

investigation and observation of Defendant. Most significantly, Officer Langella described in detail in the affidavit the following event of that same day.

The informant had agreed on the day in question to attempt to purchase a quantity of cocaine from Defendant with money supplied by Officer Langella. The informant had contacted Defendant through a paging system, and Defendant had responded to the informant's message by returning his call. Officer Langella had monitored this call, with the consent of the informant, and had overheard the informant order a quantity of cocaine and tell Defendant of his location. Shortly after the end of this conversation, Defendant had left a condominium unit in Old Orchard Beach, which the police had had under surveillance for at least two days based on the informant's information that Defendant was then living there. Defendant had traveled by car directly from this dwelling to the informant's location and had picked him up. The police officers had maintained their surveillance of Defendant's car, which Defendant and informant never left. They also had monitored Defendant's conversation with the informant through an electronic monitoring device worn by the informant. During their drive, the informant had purchased from Defendant the quantity of cocaine that he had ordered over the telephone. In addition, Defendant had indicated to the informant that he had more cocaine to sell. After dropping off the informant, Defendant had then returned directly to the dwelling in Old Orchard Beach. Officer Langella had then proceeded to request the warrant now at issue. Officer Langella and others then proceeded to search this dwelling that same evening and seized cocaine, cash, and what has been alleged to be drug trafficking paraphernalia.

## II. *Discussion*

### A. *Requisite Nexus Between the Place to be Searched and the items to be Seized*

■ Defendant's first challenge is to the sufficiency of the supporting affidavit. He contends that there is no factual basis to support two conclusory statements in the affidavit: one, that the Old Orchard Beach condominium was his residence; and two, that the officer had probable cause to believe that either contraband or the fruits of a crime would be found there. In reviewing the sufficiency of an affidavit, the Court notes that its role is to ensure that, based on the totality of the circumstances, the issuing judge had a substantial basis for concluding that the search would disclose evidence of a crime. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (citing *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).

Defendant places considerable reliance on his contention that the affidavit failed to establish that the dwelling unit to be searched was in fact his residence. He argues that the relevant case law establishes that the police must conduct an independent investigation to corroborate an informant's tip regarding the residence of a suspect. Defendant's argument, however, misses the point since the status of this dwelling unit is not the dispositive issue before the Court.

In many cases, police do conduct an independent investigation to ascertain a suspect's actual residential address where an informant merely gives officials a nonspecific address. *See Illinois v. Gates*, 462 U.S. at 225–26, 103 S.Ct. at 2325; *Commonwealth v. Truax*, 397 Mass. 174, 490 N.E.2d 425 (1986). Sometimes this investigation consists merely of surveillance. *See Commonwealth v. Petrone*, 17 Mass.App. 914, 455 N.E.2d 1227 (1983). Although probable cause that a suspect is participating in illegal activities may justify a search of his or her residence, *United States v. Picariello*, 568 F.2d 222, 227 (1st Cir.1978), probable cause in this case does not rest solely on this dwelling's status as a residence.

■ In this case, Defendant received an order for a specific quantity of cocaine. He then left this dwelling and, without stopping elsewhere, delivered the amount

of cocaine ordered to an informant in exchange for payment in cash. He then immediately returned to this dwelling. These facts clearly establish sufficient probable cause both that Defendant was keeping his supply of cocaine within that dwelling and that Defendant had the cash from the just consummated drug sale there also. *United States v. White*, 766 F.2d 22, 25–26 (1st Cir.1985) (similar facts); *see also United States v. Veillette*, 778 F.2d 899, 903 (1st Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986) (warrant to search business premises found to be supported by probable cause where officer's observations of a truck at the premises were consistent with belief that contraband was located at premises after truck was searched and discovered to contain contraband). Consequently, the issuing judge clearly had a substantial basis for concluding that the search would disclose evidence of a crime.

### B. *Description of the Place to be Searched*

■ Defendant next contends that the warrant did not describe the dwelling to be searched with sufficient particularity to preclude the possibility that another residence might be searched. The general rule is that a description is sufficient if "the officer with [the] search warrant can with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925). If, however, the place to be searched is a multiple-occupancy building, the warrant must describe the subunit to be searched with sufficient definiteness to preclude a search of one or more subunits indiscriminately. *See, e.g., United States v. Bedford*, 519 F.2d 650, 655 (3d Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976); *see generally* W. LaFave & J. Israel, *Criminal Procedure* § 3.4(e), at 132 (1985). In evaluating the warrant on this ground, the court must interpret the warrant in a common-sense and realistic manner and not in a hypertechnical manner. *See United States*

*v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965).

■ The warrant described the place to be searched as the residence of Defendant at:

> Beaver Creek Condominiums, Old Orchard Beach, Maine. These condominiums are located approximately ¾ of a mile from the Cascade Road in Old Orchard Beach. The particular unit is part of a group with a pole marked "17" to the extreme right and is the third unit from the left (facing the unit). The unit has a red door and is a 2-story wooden frame grey structure.

Defendant argues that the officers had no way to establish what constituted a unit and therefore could not reasonably ascertain which unit was to be searched. Defendant supports this argument by noting that there was another red door that could have been misconstrued as belonging to the "third unit." Defendant's argument, however, ignores several key facts apparent to the issuing judge and incorporated into the warrant.

First, the warrant specifically incorporates the attached affidavit, and the affidavit explicitly states that the Defendant's residence is "entered as the third *door* from the left as one faces the unit." (Emphasis added.) The Defendant does not allege that the entrance to his unit was not in fact the third door from the left. The Court cannot imagine how the officers might have been more precise. Second, by naming the Defendant as the occupant of the unit to be searched, the warrant sufficiently identified the place to be searched. *United States v. Bedford*, 519 F.2d at 655. Finally, this case is clearly distinguishable from those cases in which the warrant describes an entire multiple-occupancy building as the target of the search where probable cause to search exists as to only one unit. *E.g., United States v. Votteller*, 544 F.2d 1355, 1362–64 (6th Cir.1976). In this case, the warrant is restricted to the search of one unit; the officers involved in the search had personally observed the Defendant leave from and return to the unit they described; and the unit described in the

warrant and the attached affidavit reasonably represented the individual unit to be searched. Consequently, the warrant itself adequately identified the place to be searched. Under these circumstances, a hypothetical ambiguity regarding the meaning of the term "unit" is not fatal to the sufficiency of this description.

### C. Reasonable Grounds to Justify a Nighttime Search

Defendant's last ground supporting his motion to suppress is that the affidavit failed to establish the prerequisites necessary for a nighttime search under Me.R. Crim.P. 41(c). Before reaching the Defendant's argument, however, the Court must first determine whether the sufficiency of the affidavit is to be evaluated under federal or state standards. If federal standards apply, there is no question that the nighttime search was authorized under the facts of this case since the offense involved controlled substances and the search was supported by probable cause. *See* 21 U.S.C. § 879 (1982); *Gooding v. United States,* 416 U.S. 430, 445–58, 94 S.Ct. 1780, 1788–94, 40 L.Ed.2d 250 (1974).

■ A search is designated as either a state or federal search based on the amount of involvement of federal and state officials. Federal law applies to those searches where federal officers apply to a federal official for a warrant based on violations of federal law even if local officials complete both the supporting affidavit and the subsequent search. *Gooding,* 416 U.S. at 447–54, 94 S.Ct. at 1789–92. The search would, however, be a state search if federal and state officers apply for a state search warrant alleging violations of state law, *United States v. Krawiec,* 627 F.2d 577, 582 (1st Cir.1980), or if a state official obtains the warrant without any federal involvement, *United States v. Millar,* 543 F.2d 1280, 1284 (10th Cir.1976). There is no allegation before this Court that there was any federal involvement in either the procurement or execution of the warrant in question. Consequently, the Court finds the subsequent search to be a state search.

■ Although the Court finds that the search in question is a state search, it does not necessarily follow that state law controls. "When a warrant's validity is being examined for *federal* prosecutory purposes and the resulting search is 'state' in character, the warrant need only satisfy federal constitutional requirements rather than those of state law, which may involve stricter standards." *United States v. Bedford,* 519 F.2d at 653–54 (footnote omitted) (emphasis in original); *see also Millar,* 543 F.2d at 1284. In this circuit, the state search also may not contravene any policy embodied in Fed.R.Crim.P. 41 designed to protect "the integrity of the federal courts or to govern the conduct of federal officers." *Krawiec,* 627 F.2d at 581 (relying on *United States v. Sellers,* 483 F.2d 37, 43 (5th Cir.1973), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974)). Under this standard, the Court need not apply the state law relied upon by Defendant. Consequently, the Court finds that the state search conformed to the applicable federal standards.

For the reasons stated above, Defendant has failed to demonstrate to the Court that any grounds exist to invalidate the search conducted under the warrant at issue. The Court, therefore, DENIES Defendant's motion to suppress the fruits of this search, and it is hereby so ORDERED.