**UNITED STATES of America, Appellee,**

v.

**Paul A. MITRO, Defendant, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Richard J. DELCOURT,**
**Defendant, Appellant.**

**Nos. 88–1747, 88–1751.**

United States Court of Appeals,
First Circuit.

Heard April 6, 1989.

Decided July 28, 1989.

---

Joseph M. Flak, Boston, Mass., for defendant, appellant Richard J. Delcourt.

Thomas P. McCusker, Jr., with whom Law Offices of James J. McCusker, Boston, Mass., was on brief, for defendant, appellant Paul A. Mitro.

Gary S. Katzmann, Asst. U.S. Atty., with whom Jeremiah T. O'Sullivan, U.S. Atty., Boston, Mass., and Robert B. Ellard, Sp. Asst. U.S. Atty., Kingston, N.H., were on brief for the U.S.

Before CAMPBELL, Chief Judge, BREYER and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Defendants, Paul Mitro and Richard Delcourt, entered conditional pleas of guilty pursuant to Fed.R.Crim.P. 11(a)(2) to possession with intent to distribute diazepam and conspiracy to possess with intent to distribute diazepam in violation of 21 U.S.C. §§ 841(a)(1), 846 (1982). Delcourt also entered a conditional plea of guilty to the unlawful use of a telephone in violation of 21 U.S.C. § 843(b) (1982). They appeal from the denial of a motion to suppress evidence derived from a foreign wiretap, and also the denial of a motion to suppress evidence seized pursuant to a search warrant. We affirm the district court.

## I. BACKGROUND

In the course of an investigation by the Royal Canadian Mounted Police ("RCMP") into the activities of Richard Delcourt, a Canadian citizen, RCMP constable Yves Durepos obtained authorization from a Canadian court to intercept telephone conversations of Delcourt and his wife at their Quebec home. These interceptions revealed that Delcourt was telephoning someone named "Andy" in Braintree, Massachusetts. Drug Enforcement Agent Joseph Coons was contacted to identify "Andy." The telephone numbers Delcourt had called were traced to Paul Mitro's Braintree residence and the Braintree residence of Lorraine McCarthy, apparently an acquaintance of Mitro. Coons conducted a background check of Mitro with the Braintree police and also placed Mitro under surveillance. Based on the information supplied to him by the RCMP and his own investigation, Coons came to suspect that "Andy" was Paul Mitro and that Mitro was engaged in the illegal distribution of valium (otherwise known as diazepam) with Delcourt.

On November 1, 1987, the RCMP informed Coons that Delcourt might be travelling to Massachusetts to visit Mitro. Between November 1 and 3, Coons and other DEA agents, along with the Braintree police, observed Mitro and Delcourt in a Canadian registered vehicle at the Mitro and McCarthy residences and observed them making frequent use of pay telephones. During this time, the RCMP informed Coons that they had intercepted a telephone conversation from Delcourt to his Quebec residence in which Delcourt had indicated that the Americans were unhappy with the "stuff" and that "Andy still owes for the Vees."

Coons became concerned that Delcourt would soon be returning to Canada. Apparently concerned about the delay that might result in obtaining a search warrant from a federal magistrate, Coons decided to obtain a state search warrant for Mitro's residence. Based on information supplied by Coons, a Braintree police officer pre-

pared an affidavit and a proposed search warrant which was presented to an assistant clerk of the Quincy District Court. After reviewing the affidavit and proposed warrant, the clerk issued a warrant authorizing the search of Mitro, Delcourt, and Mitro's residence for illegal controlled substances, paraphernalia, records and proceeds believed associated with illegal drug activity. DEA agents and Braintree police officers executed this warrant the same day. They found a large quantity of valium tablets at Mitro's residence.

Mitro and Delcourt were arraigned in Quincy District Court on state trafficking charges. For some unknown reason, the state district attorney subsequently decided not to prosecute the state charges against Mitro and Delcourt. Consequently, a federal criminal complaint was filed against defendants, who were subsequently indicted by a federal grand jury. Defendants moved to suppress the evidence derived from the Canadian wiretap and also moved to suppress the evidence seized pursuant to the state search warrant. After holding a suppression hearing, the district court denied both motions. Defendants subsequently entered conditional pleas of guilty, reserving their right to appeal from the denial of their suppression motions.

## II. THE CANADIAN WIRETAP

■ Defendants [1] alleged in the district court that the Canadian wiretap violated their fourth amendment rights and that the evidence derived from the wiretap should be suppressed under the "exclusionary rule." The fourth amendment and the exclusionary rule do not ordinarily apply to foreign searches and seizures. *See United States v. Janis,* 428 U.S. 433, 455 n. 31, 96 S.Ct. 3021, 3033 n. 31 (1976) ("It is well established, of course, that the exclusionary rule, as a deterrent sanction, is not applicable where a private party or a foreign government commits the offending act."). *See generally* Note, *Evidence Seized in Foreign Searches: When Does*

*the Fourth Amendment Exclusionary Rule Apply?,* 25 Wm. & Mary L.Rev. 161 (1983). This court has summarized this general rule and has noted two exceptions:

the "exclusionary rule" does not require the suppression of evidence seized by foreign police agents, for the actions of an American court are unlikely to influence the conduct of foreign police. *See United States v. Rose,* 570 F.2d 1358, 1361–62 (9th Cir.1978); *United States v. Morrow,* 537 F.2d 120, 139 (5th Cir.1976), *cert. denied sub nom. Martin v. United States,* 430 U.S. 956 [97 S.Ct. 1602, 51 L.Ed.2d 806] (1977).... [T]here are two well-established exceptions to this rule: (1) where foreign police conduct "shock[s] the judicial conscience," *id.* at 139 and (2) where American agents "participated in the foreign search, or ... [the foreign officers acted] as agents for their American counterparts...." *Id.*

*United States v. Hensel,* 699 F.2d 18, 25 (1st Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983).

■ Defendants have not alleged nor is there any indication that American agents participated in the Canadian wiretap or that the RCMP acted as mere agents for DEA. The record is also devoid of any evidence even remotely suggesting that the wiretap or the conduct of the RCMP "shocks the judicial conscience." Quite to the contrary, the RCMP sought and received judicial authorization for the wiretap as provided by Canadian law. *See* R.S.C. ch. 34, §§ 178.1–178.23. Under section 178, Canadian police may apply *ex parte* for a wiretap authorization by submitting a written application and affidavit to the appropriate Canadian court setting forth the particulars of the offense and various other elements required by the statute. The application and the affidavit are then placed in a sealed packet, although the authorization is not sealed. In this case, the authorization is valid on its face. It states, as required by the Canadian statute, that 1) the submitted affidavit meets all the requirements of the statute; 2) the authoriza-

---

**1.** We will assume without deciding that Mitro has standing to challenge the foreign wiretap of

Delcourt's telephone.

tion is in the best interests of the administration of justice; and 3) other investigative methods have been tried and have failed or are unlikely to succeed. The authorization also restricts the scope of the wiretap by specifying the general identity of persons, as well as the type of communication, that may be intercepted. Thus, there is nothing to suggest that this facially valid wiretap was even illegal, let alone that it shocked the judicial conscience.[2]

■ Defendants argue, however, that because they have no access to the sealed application and affidavit they are "effectively precluded from rebutting the validity and admissibility of [the] wiretapped conversations." Defendants apparently have no standing under Canadian law to seek access to the sealed packet because they are not on trial in Canada. *See Atwal v. The Queen,* [1988] 1 F.C. 154.[3] Defendants assert that the appropriate remedy for this situation is either suppression of the evidence derived from the wiretap or an evidentiary hearing in which they could cross-examine the RCMP constable who applied for the wiretap authorization and thus possibly reveal conduct that would shock the judicial conscience.

Defendants' argument is without merit. The government "cannot be charged with wrongdoing for failure to permit inspection" of the wiretap application and affidavit held under seal by a foreign court. *United States v. Cotroni,* 527 F.2d 708, 712 (2d Cir.1975) (Canadian wiretap recordings admissible even though defendant unable to review other recordings still in possession of Canadian police), *cert. denied,* 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976). *See also United States v. Delaplane,* 778 F.2d 570, 573–74 (10th Cir.1985) (affirming district court's denial of motion to suppress Canadian wiretap evidence notwithstanding defendant's claim that his inability to obtain wiretap information required an equitable remedy), *cert. denied,* 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986). *Cf. United States v. Friedman,* 593 F.2d 109, 119–20 (9th Cir.1979) (government's failure to produce diary in possession of Chilean government did not violate due process clause, Jencks Act or Fed.R. Crim.P. 16).

■ Defendants forget how very limited our inquiry into a foreign search may be: only conduct on the part of the foreign police that shocks the judicial conscience could warrant the suppression of foreign-seized evidence.[4] Circumstances that will shock the conscience are limited to conduct that "not only violates U.S. notions of due

---

**2.** Defendants appear to suggest in their brief that evidence derived from a foreign search is not admissible in an American prosecution if the foreign search violated foreign law. We reject this argument. *See United States v. Morrow,* 537 F.2d 120, 140 (5th Cir.1976), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977); *Birdsell v. United States,* 346 F.2d 775, 782 (5th Cir.1965), *cert. denied,* 384 U.S. 914, 86 S.Ct. 1347, 16 L.Ed.2d 368 (1966).

**3.** The government claims that even if defendants were on trial in Canada they would still not be entitled to access to the sealed packet because, according to the government, under Canadian law a defendant must establish a prima facie case of fraud, misdisclosure or nondisclosure before the court that issued the authorization in order to obtain access to the packet. *See Wilson v. The Queen,* [1983] 2 S.C.R. 594. With the adoption of the Canadian Charter of Rights and Freedom, however, some lower courts in Canada have granted defendants on trial in Canada greater access or even access of right to the sealed packet. *See, e.g., Regina v. Playford,* 61 C.R.(3d) 101 (Ont.Ct.App.1987).

But see *Dersch v. The Queen,* 36 C.C.C.(3d) 435 (B.C.Ct.App.1987).

**4.** There is some debate as to whether a federal court has the authority to exclude evidence seized by foreign officials even in circumstances that shock the judicial conscience in light of *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), where the Supreme Court held that a federal court could not exclude evidence under its supervisory power where the defendant would not have standing to seek exclusion under the Fourth Amendment. *See United States v. Mount,* 757 F.2d 1315, 1320–23 (D.C.Cir.1985) (Bork, J., concurring). *See also Colorado v. Connelly,* 479 U.S. 157, 166–67, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986) (coercive police activity necessary predicate to a finding that a confession is involuntary under due process clause; "[t]he most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause."). We need not enter this debate in this case since nothing whatever appears which shocks the judicial conscience.

process, but also violates fundamental international norms of decency." Saltzburg, *The Reach of the Bill of Rights Beyond the Terra Firma of the United States*, 20 Va.J.Int'l L. 741, 775 (1980).

It is pure speculation that the unsealing of this packet might have revealed conduct capable of shocking the judicial conscience. Defendants' lack of access to an additional piece of discovery does not come close to warranting the suppression of otherwise reliable and reasonably obtained foreign wiretap evidence. Nor, on this showing, were defendants entitled to an evidentiary hearing on whether the conduct of the RCMP shocked the judicial conscience. Defendants' challenge to the evidence derived from the judicially authorized wiretap has consisted solely of conclusory, general allegations; they have failed to allege any facts regarding specific acts on the part of the RCMP that would even suggest circumstances that would shock the judicial conscience. An evidentiary hearing was not required in such circumstances. *Cf. Franks v. Delaware*, 438 U.S. 154, 155–56, 171–72, 98 S.Ct. 2674, 2627, 2684, 57 L.Ed.2d 667 (1978) (defendant must make preliminary showing to be entitled to evidentiary hearing challenging veracity of statement in warrant affidavit).

### III. THE STATE SEARCH WARRANT

■ Mitro also appeals from the denial of his motion to suppress the evidence seized pursuant to the state search warrant.[5] He argues that this evidence should have been suppressed because the warrant violated Fed.R.Crim.P. 41(a). Rule 41(a) states:

> (a) **Authority to Issue Warrant.** A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property or person sought is located, upon request of a federal law enforcement officer or an attorney for the government.

Mitro contends that the requirements of Rule 41 applied to the warrant in this case because federal agents played a large role in the investigation and search. He further argues that because the warrant was issued by an assistant clerk of the Quincy District Court rather than "a judge of a state court" as required by Rule 41(a) the evidence derived from the warrant must be suppressed.

The resolution of this issue is controlled by this court's opinion in *United States v. Krawiec*, 627 F.2d 577 (1st Cir.1980). In *Krawiec*, we upheld the admission of evidence derived from a state search warrant over defendant's objection that the warrant violated Rule 41(b) because the supporting affidavit failed to indicate that there was probable cause to believe a federal (as opposed to only a state) crime had been committed. The court in *Krawiec* reasoned that, while federal officers played a substantial role in the investigation and subsequent search, the warrant was a *state* warrant given the fact that local police were also involved in the investigation and that the federal officers in good faith believed that the search was for the purpose of pursuing a state rather than a federal prosecution. Under these circumstances, the court ruled that the warrant need not satisfy every requirement of Rule 41. Rather, recognizing the legitimate practice of state and federal cooperation in criminal investigations, the court held that a violation of Rule 41 did not require suppression if the warrant satisfied constitutional requirements and did " 'not contravene any Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers.' " *Krawiec*, 627 F.2d at 580 n. 4 (citation omitted).

In *Krawiec* we quoted with approval from the Fifth Circuit's opinion in *United States v. Sellers*, 483 F.2d 37, 43 (5th Cir. 1973), *cert. denied*, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974):

> A federal court reviewing the sufficiency of a warrant issued by a state court, for

---

**5.** While Delcourt also challenges the state search warrant, it appears that he does not have standing to do so. *See United States v. Aguirre,* 839 F.2d 854, 856 (1st Cir.1988). We need not resolve this issue because, as we rule below, the evidence seized pursuant to the warrant was admissible.

the purpose of determining whether the fruits of a resulting search are lawful and hence admissible in a federal prosecution, must determine whether the warrant was issued as a federal warrant or as a state warrant. If the warrant was issued under authority of Rule 41 as a federal warrant clearly it must comply with the requirements of the rule. If, however, the warrant was issued under authority of state law then every requirement of Rule 41 is not a *sine qua non* to federal court use of the fruits of a search predicated on the warrant, even though federal officials participated in its procuration or execution. The products of a search conducted under the authority of a validly issued state warrant are lawfully obtained for federal prosecutorial purposes if that warrant satisfies constitutional requirements and does not contravene any Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers.

*Sellers*, 483 F.2d at 43. *Accord Krawiec*, 627 F.2d at 580 n. 4.

Applying this analysis here, the instant warrant was a *state* not a federal search warrant, given the role local police played in the investigation and the belief when the warrant was issued that defendants were to be prosecuted in state court. After DEA agent Coons decided it would be best to seek a state search warrant, an Assistant United States Attorney declined prosecution. Coons then enlisted the help of the Braintree police, who had already partici-

pated in the surveillance of Mitro's home, in order to secure a state search warrant from the Quincy District Court assistant clerk. This is a valid procedure under Massachusetts law. *See* Mass.Gen.Laws Ann. ch. 218, § 33 (Supp.1989); *Commonwealth v. Penta*, 352 Mass. 271, 225 N.E.2d 58 (1967). Based on information supplied by Coons, a Braintree police officer prepared a supporting affidavit that stated that Mitro and Delcourt were engaging in activity that violated "Mass. Controlled Substance Law (ch. 94C)." After the warrant was executed by both local and federal officers, defendants were arraigned in Quincy District Court on state trafficking charges. It was only after the state district attorney's office unexpectedly declined to prosecute the state charges that federal officials initiated federal charges against defendants.

As this case involves a state warrant,[6] we need only ask whether the warrant satisfied constitutional requirements and did not contravene "any Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers." *Krawiec*, 627 F.2d at 580 n. 4 (quoting *Sellers*, 483 F.2d at 43). The warrant in the instant case satisfied these standards. It was supported by probable cause.[7] That an assistant clerk rather than a state court judge issued the warrant did not violate the Constitution nor did it contravene "any Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers." The assistant clerk was a neutral, detached officer capable of deter-

**6.** Even if this case involved a federal warrant and Rule 41 was fully applicable, noncompliance with the rule's requirements may not automatically require suppression. *See United States v. Comstock*, 805 F.2d 1194 (5th Cir.1986), *cert. denied*, 481 U.S. 1022, 107 S.Ct. 1908, 95 L.Ed.2d 513 (1987); *United States v. Dauphinee*, 538 F.2d 1, 3 (1st Cir.1976); *United States v. Burke*, 517 F.2d 377 (2d Cir.1975).

**7.** Mitro argues that the search warrant was not supported by probable cause because the supporting affidavit did not satisfy the *"Aguilar* and *Spinelli* two-pronged test" required under Massachusetts law. *See Commonwealth v. Upton*, 394 Mass. 363, 476 N.E.2d 548 (1985). We find no merit to this argument. Federal law governs the admissibility of evidence in federal criminal

trials, *United States v. Jorge*, 865 F.2d 6, 10 n. 2 (1st Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 1762, 104 L.Ed.2d 198 (1989), even when it is obtained pursuant to a state search warrant or in the course of a state investigation. *United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir.1987); *United States v. Montgomery*, 708 F.2d 343, 344 (8th Cir.1983). For the reasons set forth in the district court's ruling from the bench, the supporting affidavit established probable cause under federal law; it "demonstrate[d] in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it." *United States v. Aguirre*, 839 F.2d 854, 857–58 (1st Cir.1988).

mining whether probable cause existed for the requested search. *See Shadwick v. City of Tampa,* 407 U.S. 345, 350, 92 S.Ct. 2119, 2122, 32 L.Ed.2d 783 (1972) (issuing magistrate must be neutral and detached, and must be capable of determining whether probable cause exists for the requested arrest or search). The assistant clerk, who played no role in the investigation or search, is an officer of the state district court and is appointed by the district court clerk subject to the approval of the justice of the district court. Mass.Gen.Laws Ann. tit. 218, § 10 (Supp.1989). There is no indication that assistant clerks of the Massachusetts district courts, who are entrusted with a host of important duties under Massachusetts law,[8] lack the capacity to determine probable cause. *See Shadwick,* 407 U.S. 345, 92 S.Ct. at 2120 (non-lawyer municipal court clerk was neutral, detached officer capable of making probable cause determination for issuance of arrest warrant); *Illinois v. Gates,* 462 U.S. 213, 235–36, 103 S.Ct. 2317, 2330–31, 76 L.Ed.2d 527 (1983) (recognizing that "many [search and arrest] warrants are—quite properly, ...—issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings.") *United States v. Martinez Zayas,* 857 F.2d 122, 136–37 (3d Cir.1988) (finding no plain error where *federal* warrant was issued by non-lawyer bail commissioner contrary to Rule 41(a); defendant's "Rule 41 claim is not of constitutional magnitude ..."); *United States v. Comstock,* 805 F.2d 1194 (5th Cir.1986) (issuance of state search warrant by Texas justice of peace who was not a judge of a state court of record did not require suppression); *Vermont v. Doucette,* 143 Vt. 573, 470 A.2d 676 (1983)

(search warrant issued by Massachusetts court assistant clerk did not violate fourth amendment).

Consequently, the fact that the search warrant was issued by an assistant clerk rather than a state judge did not require suppression of the evidence seized pursuant to the warrant.[9]

*Affirmed.*

8. Under Mass.Gen.Laws Ann. tit. 218, § 33, assistant clerks "may receive complaints, administer to complainants the oath required thereto, and issue warrants, search warrants and summonses...." An assistant clerk may also conduct probable cause hearings to determine whether process should be issued based on a misdemeanor complaint. Mass.Gen.Laws Ann. tit. 218, § 35A (1958 & Supp.1989). Under certain circumstances an assistant clerk is granted even greater powers. *See* Mass.Gen.Laws Ann. tit. 221, §§ 62B, 62C (Supp.1989) (assistant clerk designated as a magistrate may grant contin-

uances, rule on uncontested, nonevidentiary motions, hold pre-trial conferences, mediate actions, hold preliminary hearings regarding a defendant's alleged violation of probation, and set bail in some circumstances).

9. Given our holding today, we disagree with the ruling in *United States v. Passero,* 385 F.Supp. 654 (D.Mass.1974) (ordering suppression of evidence seized pursuant to warrant issued by assistant clerk).